William Higgins **CONNERY**, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16607.**

Court of Criminal Appeals of Oklahoma.

June 21, 1972.

Frank E. Hensley, Guymon, for appellant.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., for appellee.

## DECISION AND OPINION

BRETT, Judge:

William Higgins Connery was tried by a for the offense of obtaining money by a jury in the District Court of Texas County false pretense. He was found guilty, sentenced to serve three (3) years in the state penitentiary, and from that conviction, this appeal has been perfected. Appellant Connery will hereafter be referred to as defendant, as he appeared in the trial court. We affirm.

The information alleged that the defendant obtained money by false pretenses by claiming to be the long absent nephew of Mr. and Mrs. Price Brown. The prosecution proved that defendant went to the residence of Mr. and Mrs. Price Brown on November 3, 1970, in Texhoma, Oklahoma, where he asserted that he was Ray Finley, a nephew whom Mrs. Brown had not seen for some twenty years. Mrs. Brown testified that defendant told her that he needed some financial help; that his car "got busted up and he had to post bond." She said that he asked for five hundred dollars ($500.00), but all she had in cash was four hundred dollars ($400.00) in twenty dollar denominations. She gave him the money expecting him and his wife to return later that evening; but the man never returned to her home. Mrs. Brown, even though seventy-eight years of age, identified the defendant in the courtroom, after having described the manner in which he was dressed on November 3, 1970.

Charlotte Hughes testified, prior to Mrs. Brown, and identified the defendant as the man who came to her door on November 3, 1970; he said that he was looking for an elderly couple who drove a light cream colored car. She said she remembered that her grandparents, who lived about two blocks from her house, drove an old 1950 Ford which was cream colored. So, she told the defendant how he could find the home of Mr. and Mrs. Brown.

The last witness offered in chief, by the state, was Deputy Sheriff Jess Scoggin, who related that on December 9, 1970, he returned the defendant from Scottsdale, Arizona, to Texas County. The state rested its case and defendant entered his demurrer to the state's evidence, which was denied.

Defendant did not testify in his own behalf but instead offered the testimony of Patrick and Chris Connery, two of his sons, and that of his daughter, Shelly Hanes. All three witnesses lived in Albuquerque, New Mexico, and they all three testified that their father was in Albuquerque on November 3, 1970, visiting in the home of their mother, Mrs. Robert Hedberg. Mrs. Hedberg was the divorced wife of the defendant. When defense counsel called for Mrs. Hedberg to testify, the state objected on the grounds that her testimony would be in the nature of alibi, and that no notice had been served upon the prosecutor, either in writing or orally, as required by the statutes. The court sustained the state's objection and defense counsel took exception and made a record, as to what Mrs. Hedberg would testify. In substance, it was asserted that Mrs. Hedberg would testify that she is the mother of the three witnesses who testified for defendant; that their testimony was true and correct; that she could corroborate their testimony; and that she saw the defendant in her home in Albuquerque, New Mexico, during the noon hour on November 3, 1970, and again later that evening. The court did not permit this testimony to go to the jury.

Defendant's first proposition asserts that he was substantially prejudiced by the exclusion of the testimony of Hilda Hedberg, his former wife. He asserts further that the provisions of Section 585, of Title 22, are not mandatory; that the intention of the statute is that, in the event notice of an alibi witness is not given, the court may, in its discretion upon motion of the prosecutor, grant a sufficient continuance to enable the prosecution to make investigation of the alibi witness. The Attorney General in his brief admits that section of the statute does not contemplate the excluding of the testimony of an alibi witness, but only contemplates a postponement of trial, at the request of the District Attorney, to properly validate the anticipated testimony of the alibi witness. But, the Attorney General asserts further, that the testimony of Hilda Hedberg would have been cumulative in nature; and therefore, defendant was not prejudiced by the exclusion of her testimony. After reviewing the transcript of testimony, we agree that the Attorney General is correct in his statement. Title 22 O. S.1961, § 585, concerning postponement for investigation of claimed alibi, provides as follows:

"Whenever testimony to establish an alibi on behalf of the defendant shall be offered in evidence in any criminal case in any court of record of the State of Oklahoma, and notice of the intention of the defendant to claim such alibi, which notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense, shall not have been served upon the county attorney at or before five (5) days prior to the trial of the case, upon motion of the county attorney, the court may grant a postponement for such time as it may deem necessary to make an investigation of the facts in relation to such evidence."

When the defendant called his former wife as his last witness, the court called for a recess and heard the objections outside the presence of the jury. The proceedings were as follows, with the prosecutor speaking first:

"MR. WOOD: We would object to any testimony from anyone in the nature of alibi since we have not received notice of her being called until this morning, either written or oral, particularly no written notice ever. I would specifically say I never received oral notice we would have Mrs. Hedberg called.

"THE COURT: Make your record.

"MR. BECKER: May it please the court, at this time I ask that Mrs. Hed-

berg be called and at least sit here while I make offer of proof. I think it is proper. I think it is proper to make an offier [sic] of proof.

"THE COURT: You can dictate what she would testify. Dictate in the record what she would testify to.

"MR. BECKER: All right. Comes now the defendant and offers to prove by Mrs. Hedberg, who is the mother of the three witnesses who just testified in this case on behalf of the defendant, to the effect that the testimony of those witnesses is true and correct and that she can corroborate their testimony in that around ten o'clock A.M. on the morning of November 3, 1970, her brother-in-law who had seen the defendant, W. H. Connery . . . .

"THE COURT: She couldn't testify what her brother-in-law told her.

"MR. BECKER: I haven't got it in yet.

"THE COURT: Go ahead

"MR. BECKER: That he had seen W. H. Connery near the home and that he presumed he was going to the house. That at Noon that day she left the Sandia Corporation offices, went by the polls and voted and drove to her home and found the defendant and two or three of their children sitting in the living room at her home in Albuquerque, New Mexico. That about 1 o'clock she returned to the office where she was working and that again around 5 o'clock she left the office and returned to her home and the defendant was there and their youngest child, Paul Connery, were there in the house at her home.

"THE COURT: Of course, Mr. Becker, that would be competent testimony in the way of alibi had you given notice required by statute. The state raises objection you failed to provide them.

"MR. BECKER: I will see all objections against the state is raised hereafter.

"THE COURT: Mr. Becker, they objected and I have to follow the law.

The reasoning behind this giving notice on alibi is clear. It gives the state a chance to check the alibi in advance. If you are going to insist on it, I will rule he can't put it on.

"MR. WOOD: I object, Your Honor.

"MR. BECKER: Give us an exception.

"THE COURT: I have to follow statutes of Oklahoma and say defendant failed to give proper notice and therefore the witness will not be able to testify."

When the parties returned to the courtroom, the defendant rested his case.

■■■■ The statute requiring a defendant to give notice that he intends to rely on an alibi as a defense was not intended as a disparagement of the defense and does not place a defendant invoking such defense under a handicap as to the quantum of proof necessary to convict, that would not otherwise be the case had he not invoked such defense, but the purpose of such statute is to erect safeguards against the wrongful use of the defense of alibi and give the prosecution time and information to investigate the merits of such defense, and with such safeguards the natural effect would be to give greater weight, not less, to an alibi which such investigation has failed to refute. State v. Waid, 92 Utah 297, 67 P.2d 647 (1937). It has been generally held also, that such notice should be filed with the clerk and be made a part of the trial record, as well as being served upon the prosecutor. Cockerham v. State, (Ind.) 204 N.E.2d 654. It is certainly the rule in this jurisdiction that any required notice must be filed with the court clerk in order to become a part of the record, as well as being served on the other party. In the instant case, neither written nor oral notice was given as provided for in the statute; consequently, it is clear that the defendant did not comply with the statute.

A literal reading of the statute leads one to believe it was the intention of the legislature that the filing of notice of alibi is not mandatory, but in the absence thereof,

on motion of the prosecution, the court may grant a continuance. In the instant case, it is obvious that the prosecution did not request a continuance, but instead objected to the introduction of the alibi testimony. The record clearly reflects also that the trial court denied the witness' testimony for the reason the prosecutor objected because the statutory alibi notice was not properly served. We fail to see the merit in the court's ruling excluding the testimony on this basis alone.

■ We therefore hold, under the provisions of 22 O.S.1971, § 585, the filing of an alibi notice is not mandatory; but in the absence thereof, on motion of the prosecutor, the court may grant a postponement of trial to permit the prosecutor to investigate the facts in relation to the alibi witness' evidence. In the event the court denies the continuance, if the evidence is otherwise admissible it shall be permitted to go to the jury.

■ However, considering the facts contained in the record before this Court, there is no doubt but that the testimony of defendant's ex-wife—as contained in the proffer of proof—would have been merely cumulative and would have not offered anything not already provided the jury. Consequently, we agree with the Attorney General that defendant has failed to show how he was prejudiced by the trial court's ruling; and while it was improper to exclude the testimony under these facts, it was not reversible error. In Bell v. State, 85 Okl.Cr. 150, 186 P.2d 344, the defendant offered a supplementary motion for new trial on the grounds of newly discovered evidence, in which it was asserted other witnesses would be offered to corroborate testimony in support of defendant's alibi. This Court held such testimony would have been cumulative and that it was not error when the trial court denied the defendant's motion. For application of this rule in the federal jurisdiction, see Loux v. United States, 389 F.2d 911 (9th Cir. 1968).

■ Defendant's second proposition asserts that the trial court committed error when testimony tending to indicate the perpetration of another crime by defendant was admitted into the record. This has reference to the rebuttal testimony of Mr. Rube Rollins, who testified that on November 3, 1970, between 2 and 4 p. m., he saw the defendant in the town of Hooker, Oklahoma, only a few miles from Texhoma. He also testified that the defendant asserted to him that he was a nephew of the witness. We fail to see how this testimony tends to relate to the commission of another offense. We observe also that this proposition is not supported by any authorities; and, therefore, will not be considered. See Sandefur v. State, Okl.Cr., 461 P.2d 954.

Defendant's third proposition contains several complaints. First, it asserts that the trial court committed error in denying defendant's motion for a new trial, as well as his supplemental motion for a new trial. Defendant's supplemental motion again refers to the denial of the testimony of defendant's ex-wife, which has already been discussed.

■ Secondly, defendant refers to additional witnesses from Albuquerque, New Mexico, who would testify defendant was there on November 3, 1970. These witnesses are listed and are not relatives of the defendant. Those witnesses should have been brought forward at defendant's trial. It is now too late to offer their testimony.

■ The third part of defendant's supplemental motion asserts that the defendant was denied his right to testify in his own behalf, on advice of counsel; and that such denial denied him of his right to due process of law. This complaint is without merit. The defendant may waive any of his constitutional rights, so long as those rights are knowingly and intelligently waived. In this case, the defendant has failed to show anything to the contrary. With reference to the rebuttal testimony of Jess Scoggin, when he testified that the defendant voluntarily told him when he returned defendant from Scottsboro, Arizo-

na, " . . . [H]e [defendant] was in Amarillo, Texas. That he could prove by his landlady," no objection was offered by defendant; and no effort was made by defendant to refute such rebuttal testimony by testifying himself, or by offering the testimony of any other witness. Consequently, we conclude the trial court did not commit error when defendant's motion, and supplemental motion, for new trial were denied.

Therefore, after carefully reviewing the record of trial, we find no error sufficient to warrant a reversal of this conviction. We are, therefore, of the opinion that the conviction appealed from should be affirmed.

It is so ordered.

BUSSEY, P. J., and SIMMS, J., concur.