**L. R. ROBERTS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–765.**

Court of Criminal Appeals of Oklahoma.

May 21, 1976.

Richard A. Hoffman, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The Appellant, L. R. Roberts, hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding and convicted of the crime of Larceny of Merchandise from a Retailer, After Former Conviction of a Felony in the District Court of Tulsa County, Case No. CRF–74–2632. Punishment was assessed at a term of ten (10) years in the custody and control of the Department of Corrections in the State of Oklahoma. From a judgment and sentence in conformance with the jury verdict, the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows, to-wit: Phil Henry, manager of a TG&Y store in Tulsa, testified that he was at work on the 11th day of October, 1974, when two men and a woman entered the store. The woman was carrying a bag which appeared flat at the time she entered. The defendant and the woman went down the "high ticket item" aisle where cameras and watches were locked into display cases. The witness stated that the defendant slumped over one of the security cases and remained in the area for approximately 4 or 5 minutes. The witness could not see the defendant's hands. When the defendant straightened up, the woman joined him and they started out of the store. Henry then inspected the security case and found that the metal clips on the glass case were standing straight up and that the cameras that had been in the case were missing. He further stated that he noted that the woman's bag had something in it when she left the store. Henry made an attempt to stop the defendant and his companions in the parking lot, however, they refused to stop and their car continued in motion, even though Henry demanded the cameras and claimed that they were in the bag. Defendant, who was not driving, answered, "We don't have any cameras," and the car left the parking lot, but the witness took down the license number and called the police. Henry further

stated that he went back over to the security case and told people not to bother it since the police were going to take fingerprints. The witness further stated that he had noticed the cameras in the case 25 to 30 minutes prior to the incident. The total value of the missing merchandise was approximately $430.00 and no one had been given permission to remove the cameras.

Tulsa Police Officer Louie Moore then testified that as a part of the followup investigation he traced the tag number to a vehicle owned by the defendant. He further stated that he showed a series of mug shots to Phil Henry and that Henry identified the defendant's picture.

Tulsa Police Officer Ronald Ellis then testified that on the 11th day of October, 1974, he was assigned to Indentification Division and was dispatched to the TG&Y store to check for latent fingerprints. He further indentified State's Exhibit No. 1 as a set of prints he had lifted from the inside of the camera case and a numbered card upon which he had written the date, his name and other pertinent information and to which the prints were affixed.

Officer Robert Yerton then testified that he was assigned to the Identification Division as a fingerprint examiner and that on the 29th day of October, he had examined the prints, partial prints and smudges found on Exhibit No. 1, with a standardized police department palm-print card which bore the name Lenard Renal Roberts, was dated the 20th of August, 1972, and signed by L. R. Roberts. He further testified that he remembered taking the prints from the defendant on August 20, 1972. It was his opinion as an expert that one of the prints on Exhibit No. 1 matched a print of the defendant found on the standardized card. The State then rested.

The defense then recalled Officer Yerton and questioned him concerning his expertise as a fingerprint examiner and his familiarity with certain textbooks on the subject. The defense then rested and the jury returned a verdict of guilty. During the second stage of the proceedings, certi-

fied copies of judgments and sentences were introduced into evidence and both sides rested.

■ The defendant's first assignment of error urges that the trial court erred in allowing the identification of the fingerprint of the defendant since the chain of custody of the State's Exhibit No. 1 was not properly established. We disagree. The evidence reveals that the fingerprints attached to the card bearing file number 13870 were lifted by Officer Ellis a few hours after the cameras were discovered missing. At that time the numbered card was appropriately marked by the officer. Yerton then testified that in his capacity as a fingerprint examiner for the division he was asked to compare the prints on Exhibit No. 1 with known prints of the defendant. He then pulled Exhibit No. 1 out of the numbered files maintained by the Tulsa Police Department Laboratory.

In *Trantham v. State,* Okl.Cr., 508 P.2d 1104, this Court considered the interdepartmental normal course of business handling of evidence and the problem of the adequate proof of chain of custody. In *Trantham,* supra, this Court quoted with approval the California case of *Wagner v. Osborn,* 225 Cal.App.2d 36, 37 Cal.Rptr. 27 (1964), as follows:

" 'It is true that the party offering demonstrative evidence must show to the satisfaction of the trial court that in reasonable certainty there had been no alteration of or tampering with the exhibit. . . . This burden, however, is not so absolute that all possibility of alteration must be negated. Even where there may be the barest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight. . . .

Although in the case at bench all persons who handled the envelope containing the specimen were not called as witnesses, the chain of possession was nevertheless substantially established, and the proof adequate to sustain the foundation for admissibility. * * *' " (Citations omitted)

See also, *Racy v. State,* Okl.Cr., 520 P.2d 375.

In the instant case the print was lifted by Officer Ellis who appropriately marked the card to which it was attached. The card was assigned an administrative file number. Subsequently, the card was removed from the department files and examined by Officer Yerton. It is this Court's opinion that the chances of alteration of the print are minimal, therefore, the proof of chain of custody is adequate to sustain, at least, the foundation of admissibility. The defendant's first assignment of error is without merit.

■ The defendant's last assignment of error contends that reversible error was committed when, during the course of the trial and during closing arguments, prejudicial comments were made which prevented a fair and unprejudiced trial. The defendant specifically refers to a comment made by Officer Yerton that he was unable to prepare an enlarged diagram of a print because he had three homicide cases on which he was working. The defendant urges that the comment infers that the defendant was involved in the homicides. We disagree. It is our opinion that no reasonable juror could make such an inference under the conditions presented by the record.

■ The defendant next specifically refers to a comment made by the prosecutor in his closing argument during the second stage of the proceeding wherein the prosecutor referred to the defendant as a thief. Such a comment was well within the evidence presented during the second stage of the proceeding. The record reveals that the defendant had been convicted in three prior larceny cases and the jury had just returned a verdict of guilty in the instant case. Since the comment was within the evidence presented, it was proper. The defendant's last assignment of error is without merit.

From an examination of the record as a whole, it is our opinion that the defendant received a fair and impartial trial, that no fundamental right of the defendant was violated, and that the judgment and sentence appealed from should be and the same is, hereby, *AFFIRMED*.

BRETT, P. J., and BUSSEY, J., concur.