Dillas Ray COATS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–752.

Court of Criminal Appeals of Oklahoma.

Nov. 28, 1978.

T. Hurley Jordan, Public Defender, Stephen J. Korotash, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Evan A. Douthit, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Dillas Ray Coats, hereinafter referred to as the defendant, was charged by information with the offense of Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.Supp.1977, § 801. The defendant was tried before a jury in the District Court, Oklahoma County, Case No. CRF–76–3485, and convicted of the alleged crime. Punishment was fixed at nine hundred ninety-nine (999) years' imprisonment. From this judgment and sentence the defendant has perfected this timely appeal.

The State opened its case at trial with the complaining witness, Ronald Catlege, who testified that on September 10, 1976, he was employed at the Knob Liquor Store in Oklahoma City. Just prior to closing, two men entered the store carrying handguns, which the witness recognized as .38 automatic revolvers. One of the men, later identified as the defendant, placed his gun to the back of Catlege's head and ordered him to open the cash register. Catlege opened the register and placed the money on the counter. Defendant then placed the money in a paper sack and instructed the witness to open a second cash register. This register was empty. The defendant then instructed the witness to put his head down and the two men left the liquor store with the money. After the pair had left,

Catlege ran to the back office and instructed a co-worker to call the police. When the police arrived, the witness gave them a description of the two men.

On the following Monday, Detectives Rinehart and Lovett showed the witness a set of photographs from which he was able to identify the defendant but not the defendant's companion. That evening Catlege went to the Police Department and picked the defendant out of a lineup. The detective showed the witness two more sets of photographs in the following week and he was able to identify the second man, Kenneth Ray Johnson, from the second set. He also identified Johnson in a subsequent lineup.

At the trial, Catlege was also able to identify the two steel revolvers used in the robbery. He stated on cross-examination that the two men had not worn masks or gloves. The witness also testified that he did not wear, and that he did not need to wear, glasses.

Detective Leroy Rinehart, with the Oklahoma City Police Department, testified that he was assigned to the robbery detail of the Robbery-Homicide Division and had been for almost ten years. He stated that he had made the followup investigation of the liquor store robbery and that he conducted the identification procedures wherein Catlege identified the defendant. He also related that when the defendant's accomplice, Kenneth Johnson, was arrested a bag of money and some weapons were recovered.

Sergeant Joe LeMaster testified he was a patrol officer with the Oklahoma City Police Department and that he assisted in the arrest of the co-defendant Kenneth Johnson. He stated that subsequent to the arrest he inventoried and impounded the co-defendant's automobile. A search of the automobile revealed two pistols and the ammunition for them.

Michael Casey, a police officer with the Oklahoma City Police Department, also testified that he assisted in Johnson's arrest. He stated that he later received two .38 caliber revolvers from Sergeant LeMaster which had been confiscated in the search of Johnson's automobile. He tagged them, initialed them and placed them in the police property room.

On recall to the stand, Detective Rinehart testified that he had investigated an average of three robberies a day for the past ten years.

The State rested its case and the defendant's demurrer was overruled.

For the defense, the testimony of Kenneth Ray Johnson was read from the transcript of a deposition, due to the unavailability of the witness. Johnson stated that he had in fact robbed the liquor store in question and that he was a friend of the defendant, but that his accomplice had been a Dick Delong and not the defendant. On cross-examination, Johnson stated that the pistols recovered from his car at his arrest were the same as those used in the robbery. He also revealed that he had been convicted of several prior felonies.

James Nelson Johnson, who stated he was not related to Kenneth Johnson, testified that Kenneth Johnson had approached him for help in getting the defendant out of jail. He stated that Kenneth Johnson told him the defendant was not guilty and should be released. The witness also related on cross-examination that he had prior felony convictions.

In the second stage of the proceedings, the State presented three prior judgments and sentences from 1954, all from Oklahoma and all sentencing the defendant to prison for robbery with firearms. The defendant stipulated that he was the person named in the judgments and sentences, that each was final on appeal and that he was represented by counsel at the time of the entry of the judgments.

The defendant then took the stand and testified that he was currently serving a term for robbery with firearms. He also stated that he received a full pardon in 1966 for the three 1954 convictions, and a certified copy of the pardon was entered as evidence. Both sides then rested.

The jury found the defendant guilty of robbery with firearms after former conviction of a felony, and the judgment and sentence was entered in accordance with the jury's verdict.

■ The defendant assigns as error the refusal of the trial court to declare a mistrial upon the injection of an alleged evidentiary harpoon which in turn is alleged to have prejudiced the defendant and denied him a fair trial. The alleged harpoon occurred during Detective Rinehart's testimony. Detective Rinehart used the term "bait money" and the court asked him to explain that term to the jury. The witness used a bank robbery as an example and in response to a question from the court, he stated, "It isn't this case, no. It was a prior case." Taken alone, this statement might tend to indicate that the defendant was involved in a previous bank robbery. However, the court made further inquiry and asked, "In other words, you are just telling us about a bank robbery to show what you mean by bait money?" To this, Detective Rinehart replied, "That's right." Detective Rinehart testified that he had worked the robbery detail for almost ten years, investigating an average of three robberies a day. In light of this testimony, it is the opinion of this Court that the jury would be more likely to assume that the detective's bank example was from one of his many previous investigations and not that the example was in any way related to the defendant or his co-defendant. Therefore, this assignment of error is without merit. See, *Dangerfield v. State*, Okl.Cr., 548 P.2d 662 (1976); *Roberts v. State*, Okl.Cr., 550 P.2d 971 (1976).

■ The defendant's third and fourth assignments of error involve the admission by the trial court of the three judgments and sentences for prior offenses, submitted for the purpose of enhancing punishment. The defendant's argument is in two parts. First, he contends that the convictions are stale under 21 O.S.Supp.1977, § 51A, and therefore inadmissible. The three judgments and sentences were for conviction of the offense of robbery with firearms, with all three sentences to run concurrently.

The judgments and sentences are dated September 9, 1954. However, on September 22, 1966, the defendant received a pardon for these prior offenses. Defendant contends that once a person is unconditionally pardoned for an offense he has satisfied his obligation to the state and his sentence should be deemed served on the date the pardon was issued. The Court agrees with this contention. Thus, the ten year period in which these prior convictions may be used began to run as of the date of the pardon or satisfaction of judgment and sentence, whichever is earlier. The defendant further contends that if a subsequent conviction is not within the ten year period required by Section 51A, then the prior convictions may not be used to enhance punishment. The defendant received his pardon for the prior offenses on September 22, 1966, and the judgment and sentence in the present case was dated April 21, 1977. Thus, the conviction in the present case is not within the ten year period. However, the crime in this case was committed on September 10, 1976, twelve days within the statutory period. We hold today that if a person commits a crime prior to the complete running of the ten year statutory period which results in a conviction which does not fall within the statutory period, the effective date of the conviction will relate back to the date of the commission of the crime.

This holding pertains only to 21 O.S.Supp. 1977, § 51A. It is the opinion of the Court that the Legislature intended to punish repeat offenders more severely than first time offenders. The criminal who does his job neatly and thus postpones his ultimate capture and conviction is not to be rewarded by allowing him to escape the provisions of Section 51A simply because his conviction comes after the running of the statutory period. This does not mean that the State may be lax in its prosecution of criminal offenders. If the State fails to vigorously prosecute a case so that through its own fault the conviction does not meet the statutory requirements, the accused may seek remedy by asserting his right to a

speedy trial. Oklahoma Constitution, Art. II, § 20.

■ Defendant's argument in the alternative would be that an unconditional pardon renders the convictions inadmissible for the purpose of enhancement of punishment. This contention is contrary to prior decisions of this Court—*Scott v. Raines,* Okl.Cr., 373 P.2d 267 (1962); *Kellogg v. State,* Okl. Cr., 504 P.2d 440 (1972)—and in fact with a majority of the states. See, 31 A.L.R.2d 1186. The defendant implies that an unconditional pardon indicates reformation as well as repentance and, thus, the convicted felon is a "new man." While this may in part be true, the subsequent commission of an offense is an even clearer indication of the habitual criminal contemplated by the statute. A pardon relieves the punishment for a crime, but does not obliterate the fact of the commission of the crime and the conviction thereof. The defendant's contentions are without merit.

■ The defendant next assigns as error the rule of evidence which allows the state to introduce evidence of prior convictions to impeach the credibility of a defendant who testifies in his own behalf. In other words, the defendant argues that this rule compelled him to forego his privilege to testify in his own behalf and, thus, was a violation of due process, denying him a fair trial. The rule of which the defendant speaks is contained in 12 O.S.Supp.1977, § 381, as follows:

"No person shall be disqualified as a witness in any civil action or proceeding, . . . by reason of his conviction of a crime; but such . . . conviction of a crime may be shown for the purpose of affecting his credibility if the crime was a felony or if the crime was a misdemeanor involving moral turpitude."

That this section applies to criminal cases was recognized in *Eaton v. State,* Okl.Cr., 404 P.2d 50 (1965). The defendant concedes in his brief that the impeachment rule is well established in Oklahoma but urges this Court to abolish it. He argues that the impeachment rule imposes an unreasonable burden on the defendant's right to testify

and as such is a denial of due process. Defendant contends that the veracity of a witness can best be judged by witness demeanor and reaction to cross-examination. The Court is not persuaded by these arguments. If the demeanor and reactions of witnesses could give such positive indications of truth, the use of polygraph machines with witness stands would be widespread. The demeanor of a defendant as a witness and his possible motivation to lie are factors which a jury may consider in weighing the credibility of his testimony. Title 12 O.S.Supp.1977, § 381, serves this same useful purpose in that it aids the jury in weighing all the evidence before it and as such it cannot be said to impose a penalty on the defendant's right to testify in his own behalf. We reject the reasoning of the defendant and of the Supreme Court of Hawaii, as cited in the defendant's brief, in its singularly contrary decision in *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971). See, *Robinson v. State,* Okl.Cr., 507 P.2d 1296, 1301 (1973).

■ The defendant also assigns as error certain remarks made by the prosecutor during closing argument of the second stage of the bifurcated trial, in that they were of such a nature as to arouse the passions and prejudices of the jury and thereby deny defendant a fair trial. The first instance of which defendant complains is without merit. The Court believes the comment of the prosecutor was a reasonable inference from the evidence at trial and, therefore, proper. *Raper v. State,* Okl.Cr., 560 P.2d 978 (1977). However, the other comments were of a more serious nature:

"[MS. JOPLIN] I don't want you to forget either the impact of armed robbery on society. I want you to think what is happening all over this country. People are afraid. We are afraid to go out at night—

"MR. TUDOR: Judge, I object. I think that is improper.

"THE COURT: No. I don't think that is an unreasonable departure from procedure.

\*   \*   \*   \*   \*   \*

"MS. JOPLIN: We are afraid. People are afraid to work in a liquor store or a 7–11. The dangers are insidious. Consider this crime. You have heard a lot about this insidious crime during this [trial]. It is a cancer on society and if we don't stop it, it is going to kill us. You know that."

This was an obvious comment on the crime rate, and this Court has held that subject to be an improper one for argument in *Mitchell v. State,* Okl.Cr., 549 P.2d 96, 101 (1976). Again, the prosecutor continued:

"[MS. JOPLIN] He was convicted on February 14th in this court again, for Robbery With Firearms. The reason we did not bring that to you is because obviously that is a case that is not final on appeal. "I will tell you this, ladies and gentlemen, he is already doing life plus twenty. You know what is going to happen to that case on appeal—

"MR. TUDOR: Your Honor, that is improper.

"MS. JOPLIN: You opened it up.

"THE COURT: No. That will be sustained.

"MR. TUDOR: Judge, I move at this time for a mistrial.

"THE COURT: Overruled."

The comment of the prosecutor was apparently intended to imply to the jury that the defendant's sentence in the prior case would be reduced on appeal. Although she failed to complete her sentence, this Court believes that enough was said to carry the implication to the jury. Such an argument would tend to have the same affect on the jury as an argument referring to the possibilities of pardon and parole, which this Court has long held to be improper. *Satterlee v. State,* Okl.Cr., 549 P.2d 104 (1976).

In light of the fact that the defendant was sentenced to serve 999 years, this Court does find that the remarks of the prosecutor had an unmistakable prejudicial effect. Since the errors occurred in the second stage of the bifurcated proceeding, this Court will only modify the sentence but not reverse the decision. *Satterlee v. State,* supra. Accordingly, the sentence will be modified to a term of fifty (50) years.

The defendant further assigns as error the excessiveness of the sentence. As the sentence has already been modified, this contention no longer has merit.

The defendant's final assignment of error asserts that the accumulation of error and irregularities previously asserted deprived him of a fair and impartial trial and denied him due process of law. Since this Court finds all but one of the previous assignments of error to be without merit, it follows that this assignment must be similarly without merit.

For the aforementioned reasons, the sentence in this case is *MODIFIED* from nine hundred ninety-nine (999) years to fifty (50) years and as such the judgment and sentence is *AFFIRMED.*

BRETT, J., concurs.

CORNISH, J., concurs in results.