**William J. JOHNSON, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–825.**

Court of Criminal Appeals of Oklahoma.

Aug. 9, 1988.

Petition for Rehearing Withdrawn Aug. 31, 1988.

William J. Johnson, pro se.

Michael C. Turpen, Atty. Gen., Mary F. Williams, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

William J. Johnson, appellant, appearing pro se in this appeal, was tried by jury for the crime of Robbery With Firearms in violation of 21 O.S.1981, § 801 in Case No. CRF–81–166, in the District Court of Cherokee County. The jury returned a verdict of guilty and set punishment at thirty-seven (37) years' imprisonment. The trial court sentenced appellant in accordance with the jury's verdict. From this judgment and sentence, he appeals.

Around noon on December 9, 1981, a man wearing a ski mask and carrying a shotgun robbed the Tahlequah Federal Savings and Loan. The man ordered the bank's vice-president to fill a bag with money. He then ordered the bank employees and customers into one central location and left without incident. He was observed by bank employees leaving the scene in a gold colored automobile.

At approximately 3:40 p.m. that same day, a Tahlequah Police Officer observed a gold colored automobile, with a driver and three passengers. The officer focused his attention upon the vehicle after he observed one of the passengers take a drink from a can of beer. The officer pulled the vehicle over and asked appellant, the driver, for a driver's license. When he was unable to produce his driver's license, the

officer instructed him to come to the police station so that he could determine the truth of his claim that he had a Montana license. No one else in the car had a license either. When they got to the station, only appellant went inside. While they were inside, another detective entered the police station and informed the first officer that two of the other passengers appeared to be intoxicated. The officers went outside and asked the passengers to step out of the vehicle and come inside. As the passengers complied with the request, another officer observed a beer can on the floor of the vehicle. When he attempted to remove the beer can, he observed a partially opened purse stuffed with money lying on the floorboard.

As a result of seeing the purse, the officer ordered the other officers to guard the vehicle and let no one near it. The officer went back inside the station, and after some questioning, the owner of the vehicle signed a waiver allowing the officers to search the vehicle. The officers then questioned the owner of the purse, who also agreed to allow a search of her purse. Later, she admitted that appellant had given her the money. The officers interviewed appellant after having fully advised him of his rights, and he confessed to the robbery.

The State established its case-in-chief through the testimony of the young woman who owned the purse as well as others present at the crime. She also testified she had been living with appellant for about two weeks; that she had heard him talk about robbing the bank on numerous occasions; and that she was with him on the morning of the robbery. She further testified that she watched the appellant enter the bank and leave after he had committed the robbery. The appellant did not testify.

■ Under the appellant's first proposition, he alleges that he was denied the right of a speedy trial which is mandated by Okla. Const. Art. II, § 20. The long-established test in this state for determining whether a defendant has been deprived of his right to a speedy trial consists of a balancing of four considerations: the

length of the delay, the reasons therefore, the party's assertion of his or her right to a hearing, and finally, the degree of prejudice suffered by the party. *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983). However, the third factor bears little weight in our balancing process. It does not matter if appellant demanded a speedy trial, because the law makes a timely demand for a defendant who is incarcerated prior to trial. *McDuffie v. State*, 651 P.2d 1055 (Okl.Cr. 1982).

■ Applying the other considerations to the present case, we must first look to the length of the delay: 22 months. There is no doubt that a delay of such length is substantial enough to constitute a deprivation of a right to a speedy trial and necessitates an inquiry into the remaining considerations.

■ In the present case, the record reveals that the information was filed on December 10, 1981, and the appellant was brought to trial on October 26, 1983. A further review of the record reveals that the appellant is partially responsible for the delay. He was scheduled on the Cherokee County District Court's jury docket in March, 1982. However, he escaped from the county jail on March 7, 1982.

The appellant was eventually captured and confined in the Tulsa County Jail on unrelated charges. Thereafter, per an application filed by his attorney, he was returned to the Cherokee County District Court on May 3, 1982, for a sanity hearing. From there he was committed to the Eastern State Hospital in Vinita, Oklahoma, for a determination as to his competence to stand trial. The medical staff at Vinita found him to be competent and released him from the hospital on May 17, 1982.

The appellant was again scheduled for trial on November 4, 1982. However, he was incarcerated in the Tulsa County Jail awaiting arraignment for charges concerning another matter. The district court's next jury docket was in March, 1983. The appellant was passed off the docket this time, at the request of his attorney, to provide an opportunity for them to reach a

plea agreement with the federal authorities on federal charges filed against appellant. The appellant was finally brought to trial during the district court's next jury docket in August of 1983.

■ A review of the record reveals no bad faith effort by the prosecution to delay the trial or hamper the appellant's defense. This Court has held that a defendant who is responsible for a delay should not be allowed to claim a violation of his right to a speedy trial. *Henager v. State,* 716 P.2d 669 (Okl.Cr.1986).

■ The final consideration is the amount of prejudice, if any, suffered by appellant as a result of the delay. Appellant claims prejudice due to the death of one witness and the possible loss of memory by another. If a defendant raises the presumption of prejudice, the burden is on the State to rebut this. The death of a witness is an obvious prejudice. If the State fails to disprove the prejudice, then the presumption must stand. *Henegar,* 716 P.2d at 674. However, the appellant's bald assertions of prejudice, unsupported by either the record or affidavits as to what the deceased witness might have testified to, fail to raise any presumption of prejudice. Having properly and carefully balanced all considerations and relevant circumstances, we find that the appellant was not deprived of his right to a speedy trial.

The appellant's second proposition contends that the trial court erred in denying him his Sixth Amendment Right to secure the attendance of defense witnesses. The United States Supreme Court stated in *Washington v. State of Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967):

The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States.

■ The Court went on to declare that a defendant has the right to present his own witnesses to establish a defense. This right is a fundamental element of due pro-

cess of law. *See also Morse v. State,* 63 Okl.Cr. 445, 77 P.2d 757 (1938).

What this Court must decide then is whether the Sixth Amendment guarantees a defendant the right under all circumstances to put his witnesses on the stand, as well as the right to compel their attendance in court. To make this determination we must examine the posture of appellant's case when the lack of process arose.

The record reveals that the appellant informed both his attorney and the trial court, at the beginning of the trial, that he was claiming he had an alibi defense. Appellant alleged that there were two witnesses who were critical to his defense. One witness was deceased and the other was his eleven-year-old daughter, who was in Montana at the time of trial.

The applicable law on an alibi defense is set forth in 22 O.S.1981, § 585, as follows:

Whenever testimony to establish an alibi on behalf of the defendant shall be offered in evidence in any criminal case in any court of record of the State of Oklahoma, and notice of the intention of the defendant to claim such alibi, which notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense, shall not have been served upon the county attorney at or before five (5) days prior to the trial of the case, upon motion of the county attorney, the court may grant a postponement for such time as it may deem necessary to make an investigation of the facts in relation to such evidence.

■ Filing of the alibi notice is not mandatory. *Connery v. State,* 499 P.2d 462 (Okl.Cr.1972). The purpose of the statute is to erect safeguards against the wrongful use of a defense of an alibi and to give the prosecution time and information to investigate the merits of such defense. *Id.*

■ We find such an abuse of the defense of alibi in this case. The appellant claimed the defense the day of trial. Notice of this defense had not been given to his own attorney prior to trial. Appellant knew at all times the location of his daugh-

ter, and with notice, arrangements could have been made for her presence at trial. Under these circumstances, this Court will not condone appellant's failure to advance this defense at the earliest opportunity. We find no error.

■■■■ The appellant's third proposition alleges that the trial court erred by denying him the right to give his own closing argument at trial. He asserts that this violated his Sixth Amendment right to make his defense. Since appellant in the present case did not elect to represent himself at the beginning of his trial, the trial court properly denied his request to deliver the closing argument. There is no right to be represented partially pro se and partially by counsel. *Thomas v. State*, 675 P.2d 1016 (Okl.Cr.1984); *Stiner v. State*, 539 P.2d 750 (Okl.Cr.1975).

Under appellant's next two propositions, he alleges that the trial court erred in not suppressing his confession. He asserts that the police officers lied on the stand and that he was offered inducements for his confession.

■■■ Statements made by a defendant after a Miranda warning is given are generally admissible. *Mills v. State*, 594 P.2d 374 (Okl.Cr.1979). Prior to admitting this evidence, the trial court held an *in camera* hearing to determine if the statements were taken in violation of appellant's Fifth Amendment right against self-incrimination. The record is also devoid of any inducements offered to the appellant for his confession. The trial court concluded that appellant had been properly advised of his rights and that he voluntarily waived those rights. *Lipe v. State*, 716 P.2d 700 (Okl.Cr.1986); *See also Fogle v. State*, 700 P.2d 208 (Okl.Cr.1985). We agree, and finding no abuse of discretion by the trial court, we find no error.

In appellant's sixth proposition, he alleges that he was prejudiced when potential jurors observed him being escorted into the courthouse by two officers while he was wearing prison clothes. Appellant claims that the trial court erred in not discharging the entire jury panel and calling a new one.

■■ In *Rhinehart v. State*, 609 P.2d 781 (Okl.Cr.1980), this Court noted that it is error to compel an accused to appear before a jury in prison clothing where a timely request has been made for civilian clothing. However, the record reveals that appellant was wearing blue jeans, a blue denim shirt and street shoes. Appellant was not in handcuffs, and his clothing bore no markings identifying him as a prisoner. Moreover, when he objected to being tried in that clothing, the trial court obliged and postponed the trial until the following day. Thereafter, appellant always appeared in a suit before the jury. We view the error, if any, as harmless.

■■■ We will now address appellant's contention that it was prejudicial error for him to be seen by potential jurors while being escorted by two armed officers. We have previously stated that the presence in the courtroom of an armed police officer does not in and of itself, require reversal. *Hart v. State*, 535 P.2d 302 (Okl. Cr.1975). Moreover, appellant was in civilian clothes; he was not handcuffed, nor shackled, and there was nothing in the record to indicate that the jury was prejudiced toward him. *Kemp v. State*, 632 P.2d 1239 (Okl.Cr.1981). Appellant had previously been convicted of violent crimes, and he had escaped from jail. We find that such security measures were warranted.

In his seventh proposition, appellant alleges that he was denied effective assistance of counsel at trial. We do not deem it necessary to enumerate each of the allegations described by appellant for purposes of this appeal.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States established the benchmark for judging claims of ineffectiveness. The test is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *See also Coleman v. State*, 693 P.2d 4 (Okl.Cr.1984). The Supreme Court developed a two-tiered test by which to judge ineffective assistance of counsel claims. First, the defend-

ant must show that counsel's performance was deficient; and, second, the defendant must show that the deficient performance prejudiced his defense.

An application of this two-tiered test to the instant case leads us to the conclusion that appellant was not denied his right to effective counsel. The evidence of appellant's guilt is overwhelming. He has failed to demonstrate that there is a reasonable probability that, absent the alleged errors, the verdict of the jury would have been different.

In the eighth proposition, appellant alleges that the trial court erred in allowing evidence gained through the search of the car to be admitted at trial. He claims this evidence was the result of an unlawful search.

An exception to the rule that warrantless searches are unreasonable per se is when the search is preceded by free and voluntary consent. *Nunley v. State*, 660 P.2d 1052 (Okl.Cr.1983). The record in this case reveals that both Ms. Laster, the owner of the purse, and Mr. Washington, the owner of the vehicle, consented to the search of their property. This consent took the place of search warrant.

In his ninth proposition, appellant alleges that the trial court erred in allowing the evidence produced from his confession to be admitted at trial. He contends the evidence was obtained as the result of an illegal confession. For the same reasons we stated under the fourth and fifth assignments of error, appellant's confession was legally obtained. The evidence was properly admitted.

Under appellant's tenth proposition, he alleges that the trial court erred in the systematic exclusion of Indians from the jury. Appellant, who is one-half (½) Indian, asserts that this denied him a trial by a cross-section of the community.

Traditionally, the motives for peremptory challenges of both the defense and the prosecution are immune from scrutiny, and purposeful discrimination cannot be assumed. *Lee v. State*, 637 P.2d 879 (Okl.Cr. 1981). This has been modified, however, by a recent United States Supreme Court case and reversal is possible where a defendant can show proof of a studied systematic effort to exclude people of a particular race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In the present case, appellant is one-half (½) Assiboine and Sioux Indian and alleges that four Indians were excused from the jury by the District Attorney without cause. This Court remanded this case for an evidentiary hearing for a determination with regard to *Batson*. At the evidentiary hearing held on January 20 and 27 of 1988, it was found that there were three women of Indian heritage excused peremptorily. These potential jurors were as follows: three-fourths (¾) Cherokee, one-eighth (⅛) Cherokee and five-eighths (⅝) Cherokee. Of the five peremptory challenges allotted to the state, four were used. Ultimately, the jury was comprised of one black, six caucasians, and five with Indian heritage as follows: a juror who is one-eighth to one-sixty-fourth (⅛ to ¹⁄₆₄) Cherokee and whose husband is one-half (½) Cherokee; one who is three-sixteenths (³⁄₁₆) Choctaw; one who is one-half (½) Cherokee and two jurors who are approximately one-eighth (⅛) each. We do not find there was purposeful discrimination practiced in this jury selection.

Although *Batson* dealt with a black defendant and appellant is Indian, not black, we find the principle is the same since to be an Indian is to be a member of an identifiable racial minority. We will not decide in this case, as it would be premature, what quantum of blood is necessary to prove a defendant's status as a member of a "cognizable racial group," or if physical characteristics alone—and if so which ones—are sufficient to establish entitlement to this special rule. For purposes of this appeal, we will accept appellant's claim, although the evidence is not conclusive, that he is one-half (½) Indian, and we will assume he had sufficient physical indicia of his heritage to justify an inquiry. Whether or not the prosecutor was trying to discriminate, we find the plan, if it existed at all, failed. Appellant has failed to

show he suffered a detriment from the jury selection process. Two of the jurors left on the panel have as much or more Indian blood than appellant, and one, who although she is only one-eighth (⅛) Indian, is married to a man who is one-half (½) Indian.

In appellant's eleventh proposition, he contends that the trial court erred in ruling that, if he took the stand to testify, he would be subject to impeachment by the district attorney by proof of several felony convictions. Title 12 O.S.1981, § 2609, provides in pertinent part:

A. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime:
1. Involved dishonesty or false statement, regardless of the punishment; or
2. Was punishable by death or imprisonment in excess of one (1) year, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the detriment of the defendant....

■■■ Moreover, this Court held in *Moore v. State*, 650 P.2d 901 (Okl.Cr.1982) that upon taking the witness stand, a defendant is subject to impeachment in the same manner as any other witness. It is well settled that a prosecuting attorney may cross-examine a defendant as to former convictions for the purpose of affecting his credibility as a witness. When a defendant takes the stand to testify on his own behalf, he does so subject to inquiry concerning his former convictions. *Id.*

■■■ Appellant further argues that the impeachment rule imposes an unreasonable burden on a defendant's right to testify, and as such is a denial of due process. We disagree. The demeanor of a defendant as a witness and his possible motivation to lie are factors which a jury may consider in weighing the credibility of his testimony. *Coats v. State*, 589 P.2d 693 (Okl.Cr.1978).

■■■ The trial court is given wide latitude in determining probative value of a prior conviction weighed against its prejudicial effect for the purposes of admissibility of a conviction. *Campbell v. State*, 636 P.2d 352 (Okl.Cr.1981). Considering the violent nature of appellant's prior conviction, we find that the trial court's ruling on appellant's motion on the use of prior convictions was not error.

■■■ Appellant alleges in his final proposition that his sentence is excessive. This Court's position on excessive punishment is well-settled and has been expressed as follows:

This Court has repeatedly held that the question of excessiveness of punishment is to be determined by a study of all the facts and circumstances surrounding each individual case. We do not have the power to modify a sentence unless we can conscientiously say under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court.

*Failes v. State*, 589 P.2d 1080 (Okl.Cr. 1979). Appellant's sentence of thirty-seven years' imprisonment for a conviction of Robbery With a Firearm is well within the range set by 21 O.S.1981, § 801. The range is from five (5) years to life imprisonment. Considering the strength of the evidence of appellant's guilt, we cannot conscientiously say that the sentence assessed shocks the conscience of this Court.

■■■ When this matter was remanded for an evidentiary hearing on the *Batson* issue, the trial court was also directed to make a judicial determination as to appellant's competence to stand trial and aid in his defense. In the original trial, a post-examination competency hearing was not conducted. *See* 22 O.S.1981, § 1175.4. Appellant did not originally raise this issue in his appeal and in fact he declared at the January, 1988, hearing that he believed himself to be competent now and at the time of his trial. However, on Feburary 18, 1988, in a letter to the trial judge, appellant is now claiming he may not have been competent. We note that his belated claim leans more toward a claim of insanity as a defense rather than competence to

stand trial. *See Miller v. State*, 751 P.2d 733 (Okl.Cr.1988).

The history of this issue is as follows: Appellant's counsel petitioned the district court for a competency evaluation prior to trial; the petition was granted without contest and appellant was sent to Eastern State Hospital at Vinita. The medical people at Vinita found he had "no mental illness" and he was returned to Cherokee County. The district court, however, did not make a judicial finding of mental competence at that time but proceeded as if that determination had been made. Appellant was represented by counsel at the 1988 evidentiary hearing but he, by choice, is still appearing pro se in this appeal.

Appellant is a 36–year–old father of three; his first wife is deceased, and he is separated from his second wife. He dropped out of high school in the eleventh grade and joined the army. He served eleven months in Vietnam and was a Specialist 4th class when he was given a medical discharge. He has since obtained a GED and completed three years of college. He reports he will graduate in one year with a degree in Sociology and Criminal Justice.

Both Psychiatrists who were responsible for evaluating Johnson, almost five years ago, are now deceased; however, his medical records were still intact and a doctor on staff at Eastern State Hospital testified regarding the information in appellant's record.

The statute places the burden on the defendant to show that an issue of competence exists. In this case, appellant had no evidence of his incompetency, in fact, he has repeatedly emphasized in his brief as well as in his testimony at the hearing, that he was competent but his trial counsel was not. He has provided an extensive critique of his attorney's performance at trial. The gist of appellant's evidence is that he was not only competent to stand trial but that he was also somewhat knowledgeable about the law and the workings of the judicial system when he was tried. Although appellant was a difficult client to represent, he was not an incompetent one;

the passage of time in this particular case has not prevented a belated determination of this issue. *See Rowell v. State*, 699 P.2d 651 (Okl.Cr.1985); *but see Scott v. State*, 730 P.2d 7 (Okl.Cr.1986) (case reversed and remanded for a new trial for failure to conduct a pretrial competency hearing).

Therefore finding no error to require reversal or to justify a modification, the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

I write separately to again point out my disagreement with the holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As I explained in my separate opinion in *Manuel v. State*, 751 P.2d 764, 766–67 (Okla.Crim.App.1988), the effect of *Batson* is to force a peremptory challenge, which is a challenge without cause, to become a challenge for cause. Nevertheless, I am bound to follow this rule of federal constitutional law.

As pointed out by Judge Brett, *Batson* dealt with the exclusion of black veniremen. Although *Batson* is unclear as to whether this principle must be applied to all identifiable racial groups, I believe that the Equal Protection Clause requires the rule to be applied to all cognizable racial groups. Accordingly, I concur.