Jeffrey Scott MILLER, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-86-543.

Court of Criminal Appeals of Oklahoma.

Oct. 30, 1989.

Terry J. Hull, Asst. Appellate Public Defender, Norman, for appellee.

Robert H. Henry, Atty. Gen. of Oklahoma, Steven Spears Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Jeffrey Scott Miller, was tried by a jury in Lincoln County District Court, Case No. CRF–85–36, and convicted of Second Degree Rape, 21 O.S.Supp.1983, § 1114 (Count I), Forcible Sodomy, 21 O.S.1981, § 888 (Count II), and First Degree Burglary, 21 O.S.1981, § 1431 (Count III). The jury set punishment at fifteen (15) years' imprisonment for Count I, twenty (20) years' imprisonment for Count II, and seven (7) years' imprisonment for Count III. The trial judge sentenced appellant accordingly, ruling that the last five (5) years of his sentence for Forcible Sodomy should be suspended, and ordering that all the sentences should run concurrently. From these judgments and sentences, appellant appeals.

Between 1:00 and 2:00 a.m. on the morning of May 3rd, 1985, F.B., a seventy-two (72) year old woman, was awakened by noises outside the bedroom window of her trailer home. She put on her glasses, looked out the window, and saw a man standing next to a utility pole located about six (6) feet away. The light from a nearby street lamp illuminated the man's features, and she recognized him as one of her neighbor's grandsons, the appellant. F.B. yelled at appellant to leave, but he proceeded to break through the front door. Appellant left just before sunrise, after he repeatedly raped and beat F.B., and forced her to commit oral sodomy.

Immediately after her ordeal, F.B. called her son, Jerry B., and told him what had happened. F.B. then called Frank Breeden, the local police chief. The two men arrived a short while later, and F.B. told them what had happened. She described her assailant as an Indian, 5'4" to 5'6" in height, with dark, shoulder length hair, who was wearing a dark tee shirt and blue jeans.

F.B. informed her son, Chief Breeden and Deputy Larry Johnson, who arrived later, that her assailant was one of her neighbor's grandsons. Chief Breeden asked if the grandson named "Todd" had been her attacker. F.B. replied "No, [t]hat next one." When asked whether her attacker's name was "Scott," she said "Yes."

Appellant was arrested later that evening. A photographic lineup which included a recent snapshot of appellant was then presented to F.B., but she failed to identify him as her assailant. Chief Breeden testified that F.B. had been sedated and was lying down when he arrived to show her the lineup.

At trial, F.B. identified State's Exhibit A–21 as the black tee shirt appellant left behind in her trailer. Appellant testified that he was wearing a black tee shirt on the night the crime occurred. However, he denied having committed it, stating that at that time he was asleep in his mother's home located down the street from F.B.'s trailer.

For his first proposition, appellant claims that the trial court committed reversible error in failing to suppress F.B.'s in-court identification of him. He argues that F.B.'s identification was improperly admitted because it was based upon suggestive police questioning prior to trial rather than upon her memory of what occurred. Initially, appellant reiterates testimony at both preliminary hearing and trial, arguing that certain inconsistencies and contradictions indicate that F.B. had absolutely no basis for claiming that appellant committed the crimes charged. Appellant then points to the fact that during the investigation, the police asked F.B. whether her assailant had been "Todd" or "Scott." He contends that because the evidence showed that F.B. had no valid reason to identify him as her assailant, this suggestive police interrogation must have supplied her with the basis for her accusations.

Assuming *arguendo* the police in this case engaged in impermissibly sugges-

tive pretrial interrogation, and that F.B.'s identification of appellant was the product of this questioning, our inquiry becomes "whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). "[R]eliability is the linchpin in determining the admissibility of identification testimony...." *Id.* at 114, 97 S.Ct. at 2253. The factors to be considered in determining reliability include (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's description of the perpetrator prior to any improper suggestion; (4) the level of certainty demonstrated by the witness at the time of the confrontation; and (5) the length of time between the crime and the confrontation. *Id. See also Nelson v. State,* 755 P.2d 684, 687 (Okl.Cr.1988).

After applying these five factors to the facts in the instant case, we conclude that F.B.'s in-court identification of appellant was reliable and thus properly admitted. While wearing her glasses, F.B. watched appellant for approximately one minute as he stood in the light from the street lamp outside her bedroom window. Although appellant knocked F.B.'s glasses from her face prior to the attack, and no lights were on because the electrical wires had been cut, F.B. testified that the outside lights enabled her to get a good look at appellant, who subjected her to nearly five hours of beating and forced sexual acts. F.B. was awake and apparently alert during the attack, and described appellant in detail before the police mentioned any names of possible suspects to her. While F.B. was unable to identify appellant from a photographic lineup presented to her on the evening following the crime, there was evidence that she was sedated and upset when asked to view the photos. Further, she testified that she was certain appellant had been her attacker. Finally, we find no undue delay between the crime and the confrontation at trial which would have contributed to misidentification.

■ Appellant also argues in his first proposition that the State presented insufficient evidence to support his conviction. Because both circumstantial and direct evidence were presented against appellant, the proper test to use in determining sufficiency is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Riley v. State,* 760 P.2d 198, 199 (Okl.Cr.1988). After reviewing the record, we conclude that the evidence presented at trial was sufficient to support a rational finding of guilt. *See Vick v. State,* 756 P.2d 1239, 1240 (Okl.Cr.1988). *See also McDade v. State,* 752 P.2d 827, 829 (Okl.Cr.1988). This argument and appellant's first proposition are denied.

■ In a supplemental proposition, appellant, a Native American, claims that the prosecutor systematically excluded from the jury two people of Negro origin in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The transcript of voir dire reveals that the only two minority veniremen, James Bobo and Patricia Parker, were excused by way of prosecutorial peremptory challenges. Defense counsel entered timely objections on the basis that these jurors were excused solely because of their race.

*Batson* forbids prosecutors from excusing potential jurors "solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89, 106 S.Ct. at 1719. *See also Brown v. State,* 762 P.2d 959, 962 (Okl.Cr.1988). To establish a prima facie case of discrimination under *Batson,* an accused must show, first, that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove from the venire members of his race. *Id.* In proving a prima facie case, an accused is entitled to rely on the fact that peremptory challenges permit "those to discriminate who are of a mind to discriminate." *Id.* Finally, an accused must show that these facts and any other

relevant circumstances raise an inference that the prosecutor used his or her peremptory challenges to exclude possible jurors on the basis of their race. *Id.*

We have previously held that an appellant, such as the one at bar, who is not black but who is a member of a cognizable racial group, is entitled to assert a discrimination claim under *Batson.* *See Johnson v. State*, 761 P.2d 484, 490–91 (Okl.Cr. 1988). However, because appellant in the instant case is an Indian and the two excused minority jurors were both black, he has failed to establish the first prong of a prima facie *Batson* violation, which requires proof that the prosecutor removed from the venire "members of the [appellant's] race." *Batson* at 100, 106 S.Ct. at 1723. *Compare Brown* at 962; *Johnson* at 490–91. Regardless of this *Batson* requirement, appellant cites *Peters v. Kiff*, 407 U.S. 493, 504, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972), arguing that "even a white defendant has standing to object [to] and obtain relief from the discriminatory exclusion of blacks from his jury."

The United States Supreme Court in *Peters* held that:

> *whatever his race*, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of *any* race,

and thereby denies him due process of law.

*Peters* at 504, 92 S.Ct. at 2169 (emphasis supplied). Therefore, this case would at first glance appear to support appellant's argument that even if the person asserting the *Batson* violation were not a member of the racial group which the prosecutor excluded from the jury panel, he or she could nonetheless establish a prima facie case of purposeful discrimination. However, *Peters* was a "jury representativeness" case which dealt with the arbitrary and "wholesale exclusion of ... large groups [of minorities] from jury service...." *Lockhart v. McCree*, 476 U.S. 162, 175, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137 (1986). Therefore, *Peters* is inapposite to purposeful discrimination cases such as *Batson* and the one at bar. This argument and appellant's supplemental proposition are denied.

Finding no error, judgment and sentence is AFFIRMED.

PARKS, P.J., LANE, V.P.J., and LUMPKIN, J., concur.