### WILL EVANS v. STATE.

No. A-4680.   Opinion Filed Jan. 10, 1924.
(221 Pac. 794.)

(Syllabus.)

1.   Trial—Rule as to Separation of Jurors Stated. While the law allows the separation of the jury, in the discretion and under proper admonition of the court, at any time before the submission of the cause, yet if it appears that the jury, in commingling with the public during the trial, would be exposed to improper influences or be affected by the passions or prejudices existing outside the courtroom, it is the duty of the court to keep the jury together under charge of a sworn officer or officers during the trial.

2.    **Same—Permitting Jury to Separate in Capital Case Abuse of Discretion.** Where, in a capital case, defendant requested the court to have the jury kept together under charge of a sworn officer, during the trial, but the request was refused, and the court permitted the jury to separate against the objection of defendant, held, an abuse of judicial discretion, and it was error to permit a separation over defendant's objection.

3.    **Same—"Submission of Cause to Jury."** In a criminal trial, the "submission of the cause to the jury," occurs after hearing the charge, and at the close of the argument.

4.    **New Trial—Prejudice from Permitting Jurors to Separate Presumed.** Where, in a capital case, after hearing the charge and argument of counsel, the court permitted the jury to separate against the objection of defendant under circumstances which gave an opportunity for the exercise of improper influences over the jurors, prejudice to defendant will be presumed, and, on motion for new trial, the burden is on the state to overcome such presumption of prejudice.

Appeal from District Court, Wagoner County; E. A. Summers, Judge.

Will Evans was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

W. T. Drake, for plaintiff in error.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, Will Evans, was convicted of manslaughter in the first degree, on an information which charged that in Wagoner county, on or about the 30th day of June, 1922, he did kill and murder one Selma Selby. The jury failed to agree upon the punishment. By the judgment of the court he was sentenced to a term of 20 years in the penitentiary. To reverse the judgment he has appealed to this court.

It appears that appellant and deceased were both employed on a farm near Haskell; deceased was overseer of

this farm and appellant employed as a farm hand. They had been old acquaintances in Texas, where they formerly resided. They were both married men. Appellent was 30 years of age at the time of the homicide; his family consisted of his wife and three small children. Deceased was 34 years of age; his family consisted of his wife and two small children. Both, with their families, had moved to Wagoner county the latter part of December, 1921. They lived in houses approximately 100 yards apart on the farm where they were employed.

The circumstances of the killing which took place in the evening of the date alleged, in the house of deceased, as shown on the part of the state, were that appellant approached Selby, who was milking a cow in the barnyard. After some conversation they went into Selby's house. Selby sat down at the library table and commenced to figure up the time and what was due appellant for his work, and said that in discharging appellant he was doing what Mr. Stone, the owner of the farm, told him to do. Appellant insisted that he had been hired for a year, and Selby said, "I hired you by the month." In the argument that followed appellant accused Selby of having insulted his wife. During the controversy appellant shot and killed Selby.

The defense relied upon is that the killing was justifiable as being in self-defense.

One of the grounds of the motion for new trial and assigned as error is that the court erred in permitting the jury to separate at each adjournment taken while the trial was in progress, and in permitting the jury to separate after both the state and defendant had rested their case, and after the instructions of the court had been given to the jury, and after counsel for both the state and the defendant had fully

completed their arguments to the jury, and that by reason thereof the substantial rights of the defendant have been prejudiced.

It appears that the trial commenced on September 25th, and both the state and the defendant rested their case about 5 o'clock p. m. of September 26th, at which time an adjournment was taken until 7 o'clock that evening. Before this adjournment was taken, the defendant objected to the jury being permitted to separate, and asked the court to place the jurors in the charge of a sworn bailiff, and to require them not to separate until a verdict was reached. The court refused the request and overruled the objection, to which the defendant excepted.

At 7 o'clock p. m. court reconvened. The court instructed the jury, and the arguments of both the state and the defendant followed. After the closing argument on the part of the state, the defendant again asked the court to place the jurors in charge of a sworn bailiff, and to require them to be kept together until a verdict was rendered.

The record is as follows:

"By the Court: Gentlemen, it is now 11:30 p. m., and I don't think I will submit this case to the jury until in the morning.

"By Mr. Drake: If the court please, the defendant now requests the court to submit the case to the jury immediately, and asks that the jury be put in charge of a sworn bailiff and not permitted to separate until after they have returned their verdict into court. Defendant, at this time, further objects to the jury being permitted to separate for the reasons heretofore urged, and the further reason that now after the evidence is all in and after the court has instructed the jury and after argument of both counsel for the state and defendant has been made, to permit the jury to separate

is likely to prejudice the rights of this defendant. The defendant further objects to the jury being permitted to separate at this time, for the reason that the large crowd of people now attending this trial and that have attended this trial since its beginning are extremely hostile and prejudiced against the defendant; that if the jury is permitted to separate at this time they are likely to be influenced by the hostile feeling against this defendant, and the rights of the defendant are likely to be prejudiced by permitting this to be done.

"By the Court: Objection overruled.

"By Mr. Drake: Defendant excepts."

On the morning of September 27th, the case was finally submitted to the jury by the court, and on the same day they returned into court their verdict.

The motion for new trial, duly verified, is in part as follows:

"That the jurors were influenced in their verdict against the defendant by what they heard outside of the trial of this case. That the jury would not have convicted the defendant had they been kept free and clear of the hostile sentiments of the crowds on the streets and in the courtroom. That the jury at each and every adjournment during the trial was compelled to listen to remarks from the bystanders hostile to this defendant.

"That in support of the last three grounds of this motion, and to further show that his substantial rights have been prejudiced, this defendant says that there were five brothers and one sister of deceased, Selma Selby, together with their families constantly in attendance at the trial. That relatives of deceased had induced a large number of friends to attend the trial, and that they and their friends constituted almost the entire crowd that attended this trial. That they were able to and did mold and shape a strong sentiment against this defendant, both in the courtroom and

on the street. That the sentiment and prevailing opinions of persons attending the trial were hostile and bitter towards this defendant. That the jury were permitted to and did mix and mingle with this crowd, both on the street and in the courtroom at each adjournment of the trial. That, on account of the conditions as above set out, this defendant was denied a fair and impartial trial."

The affidavit of T. A. Foster is, in substance, as follows: That he attended the entire trial; that there were from 100 to 150 people in attendance; that practically all of these people were very bitter against the defendant; that the comments by the crowd in the courtroom were generally bitter against the defendant; that the jurors mixed and mingled with the crowd of people hostile to the defendant at each adjournment during the trial.

Miss C. C. Boyd, in her affidavit, states that she is a resident of Wagoner and reported the proceedings of the trial for the Muskogee Times Democrat, and Muskogee Daily Phoenix, and was present in court during the trial; that nearly all the people in attendance were extremely hostile to the defendant; that the common conversation in the courtroom was to the effect that Will Evans was guilty and ought to be convicted; that during the intermissions of the trial the jury were permitted to and did mix and mingle promiscuously with the crowd in the courtroom and on the streets.

The proof offered in support of the motion for new trial was not traversed by the state.

Under the provisions of our Criminal Code the jurors sworn to try the cause may, at any time before the submission of the cause to the jury, in the discretion of the court, be permitted to separate or be kept in charge of proper officers. Section 2716, Comp. Stats. 1921.

At each adjournment of the court, whether permitted to separate or kept in charge of officers, the jury must be properly admonished by the court until a final submission of the cause. Section 2717, Comp. Stats. 1921.

Our Criminal Code further provides:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court.'" Section 2723, Comp. Stats. 1921.

It is the well-settled doctrine in this state that in capital cases the jurors should not be permitted to separate after they have been sworn, where one of the parties object thereto. While the law allows a separation of the jury with the permission and under proper admonition of the court at any time before the submission of the cause, yet we believe that, in the exercise of sound judicial discretion, the trial court in a capital case should not refuse a request from either party to place the jury in charge of sworn officers during the progress of the trial. Armstrong v. State, 2 Okla. Cr. 567, 103 Pac. 658, 24 L. R. A. (N. S.) 776.

In Bilton v. Territory, 1 Okla. Cr. 566, 99 Pac. 163, Judge Baker said:

"In any criminal case it is error to permit the jury to separate after the case has been submitted to them, and before they have reached a verdict. The object intended to be gained by preventing the separation of the jury is to safeguard in every possible way the purity of the stream of justice; to prevent it from in any manner being polluted by

influences other than those which are produced by the legal evidence and the law governing the case. Such a course is both a protection to the interests of the state in bringing to justice one who may have committed a crime and safeguards the rights of the accused on trial for his life. It will be conceded by all interested in the administration of justice that one accused of crime is to be convicted or acquitted only upon the evidence given in his presence; that the minds of those who are to decide questions involving life and liberty are free from prejudgment; that in the course of the trial no impression ought to operate on the minds, except that which is derived from the testimony presented to them in open court and the law as given them in charge by the court; that the minds of the jurors shall be free from prejudice and bias, either for or against the prosecution or the accused before the trial begins, and shall continue impartial until they have delivered themselves of their verdict. This can be guarded only by preventing the separation of the jury, and the prudence and care of the trial court and the officers thereof. Such a course of procedure will free the minds of the public as well as the parties directly interested in the trial of the case from the slightest suspicion that the stream of justice is not in all respects pure and free from contamination. Absolute impartiality and fairness in the trial of criminal case should be desired by all concerned. Preventing the separation of the jury offers the best means to prevent undue and unlawful influences. To keep the jury from separating may at times be difficult of accomplishment, but the trial court should make proper provision therefor, and the rule against the separation of jurors in capital cases should in no manner be relaxed.''

In Armstrong v. State, supra, we said:

''It is our opinion that this section imperatively requires that, upon the final submission of the cause to the jury, they cannot be permitted to separate, and if, after such submission, the jury separates, such separation vitiates the verdict, notwithstanding no affirmative proof of prejudice is offered. When this provision of the law is violated, the legal pre-

sumption is that it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right.''

In Chance v. State, 5 Okla. Cr. 194, 113 Pac. 996, it was held that:

''It is reversible error for the trial court to permit a jury to separate after the submission of a felony case to them for determination, under our statutes, especially when the defendant objects to such separation and the state fails to show that he was not prejudiced thereby.''

. The Attorney General says:

''The defendant's objection to the separation of the jury and request that it be kept together was overruled, and the request was refused, on the theory that the case had not yet.been submitted to the jury: In view of this the question is pertinent: After the charge had been given by the court to the jury, and after all arguments had been made, was the case then 'submitted to the jury?' ''

We think as a matter of law that the ''submission of the cause to the jury'' occurs at the close of the argument. Under the old statute the argument preceded the charge. Under the present statute the charge precedes the argument. Under the provisions of the section above quoted, the jury must at once do one of the two things specified, viz.: Either decide in court, or retire for deliberation; and, if they cannot decide in court, one or more officers must be sworn to keep them together, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court.

In State v. Parrant, 16 Minn. 178 (Gil. 157), it is said:

''To say that, after hearing the charge, the jury may go at large for such time as the court may direct, and then return into court and either agree or retire, or that, if they cannot agree without retiring, they may in like manner go

at large, and then return into court, and an officer being sworn to take charge of them, retire in his charge, would, in our opinion, be making a new section, not construing this one.''

In principle, we can see little difference between a separation of the jury after hearing the charge and the argument of counsel, and a separation after the actual retirement of the jury for deliberation.

The plain purpose and intent of the law is to surround a trial by such safeguards as will exclude all external and improper influence from the jury, and thus protect the right of the defendant to a fair and impartial trial. While it is within the discretion of the court to permit the jury to separate at any time before the case is fully submitted to them, yet if it appears that the jury or that jurors in commingling with the public during the trial would be exposed to improper influences or be affected by the passions or prejudices existing outside the courtroom, it is the duty of the court to keep the jury together under charge of a sworn officer or officers during the trial. Courts cannot be too strict in guarding trials by juries from improper influences, and in compelling a vigilant observance of all the provisions of the Criminal Code tending to preserve the purity of such trials. Believing that such danger existed in this case, the defendant requested that the jury be kept together under the charge of a sworn officer.

It is charged, and the proof offered in support of the motion for a new trial shows, that five brothers and a sister of the deceased and other relatives and friends mingled with the jury at every recess and adjournment of the trial, and this proof was undisputed by the state.

It will not do for courts to sanction such loose practice in proceedings which jeopardize the life and liberty of the

citizen. Every person charged with crime is entitled, as a matter of right, to require in the first instance, a compliance with the ordinary forms of law to secure him a fair and impartial trial; and, if the provisions of law intended for his security are disregarded, he may require satisfactory evidence from the state that he has not been injured by reason of such noncompliance.

On the record before us we are convinced that the defendant should have a new trial. We think the refusal of the trial court of the defendant's request to have the jury placed in charge of a sworn officer was a manifest abuse of judicial discretion, and the failure and refusal of the court at the close of the argument to submit the cause and to have the jury kept together in charge of a sworn bailiff constitutes prejudicial error.

For the reasons stated, the judgment is reversed, and the cause remanded for a new trial.

The warden of the penitentiary is directed to deliver the defendant, Will Evans, in the custody of the sheriff of Wagoner county, who will hold him in custody subject to further proceedings according to law.

MATSON, P. J., and BESSEY, J., concur.