John Wayne DUVALL, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-87-392.

Court of Criminal Appeals of Oklahoma.

May 28, 1991.

Rehearing Denied March 2, 1992.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LUMPKIN, Vice Presiding Judge:

John Wayne Duvall, Appellant, was tried by a jury for the crime of Murder in the First Degree in the District Court of Stephens County, Case No. CRF–86–251. Appellant was represented by counsel. The jury returned a verdict of guilty and recommended punishment at death after determining the aggravating circumstances that the defendant was previously convicted of a felony involving the use or threat of violence to the person, and that the murder was especially heinous, atrocious or cruel. The trial court sentenced Appellant accordingly. From this judgment and sentence, Appellant appeals.

In August, 1985, the Appellant, his wife Karla, also referred to as the decedent, and their young son moved into a duplex at the Chickasaw Nation Apartment Complex in Duncan, Oklahoma. Karla Duvall became friends with the next door neighbor, Connie McKinney. Several months later the Appellant moved out of the apartment because of marital difficulties. However, Karla and the Duvall's young son continued to occupy the apartment.

On September 18, 1986, Appellant walked into the Stephens County Courthouse, and approached County Commissioner and former Assistant Police Chief, Alvie Chasteen, and asked to speak to him. Mr. Chasteen testified that he asked the Appellant if he was in any kind of trouble and the Appellant's response was, "I killed my wife Monday night". Chasteen called the sheriff and immediately took Appellant up to the sheriff's office. Once inside, Sheriff Alexander read Appellant his *Miranda* rights. The Appellant indicated that he understood his rights, signed a waiver form and stated that he desired to talk to the authorities. At that time Appellant told the sheriff and Mr. Chasteen what happened on September 15, 1986. A tape of the Appellant's statement to Sheriff Alexander was played to the jury. On that tape the Appellant stated that on Monday night, September 15, 1986, between 10:30 p.m. and 11:00 p.m., he killed his wife, Karla. After taking the Appellant's confession, Sheriff Alexander obtained a consent to search, notified the District Attorney and other law enforcement authorities, and proceeded to the Appellant's duplex where they found the body of the decedent lying naked on the bed. During the search of the duplex, various knives, Appellant's clothing, and a number of other items were found, which corroborated Appellant's statement to the police.

The State also called a number of witnesses during the trial to corroborate Appellant's statement. Connie McKinney, a witness for the State, testified that she saw Appellant walking towards the apartment at approximately 10:00 p.m. on the night of the murder. Frankie Dale Vaughn and Jeff Brown, also witnesses for the State, testified to giving Appellant a ride from Love's convenience store to the entrance of the apartment complex. The defense did not put on any witnesses during the first stage of the proceedings, nor did it present any evidence during the second stage.

■ In his first assignment of error, the Appellant alleges trial court error in admitting evidence of the defendant's previous acts of violence in violation of the hearsay rule. Specifically, he refers to statements made by Karla Duvall to her neighbor, Connie McKinney, and to her brother, Nathan Bobbett. Ms. McKinney testified that approximately two weeks before her death, Karla Duvall came running over to Ms. McKinney's apartment and asked her son to lock the door. Karla Duvall then hid under Mrs. McKinney's kitchen table, and appeared to be so frightened that she was trembling and causing the table to shake. Mrs. McKinney was going to call the police but was stopped by the decedent, who said that her husband would kill her if he was arrested. The Appellant then arrived and told Mrs. McKinney to open the door, and when she refused, he threatened to kill her as well as his wife. When Mrs. McKinney told Appellant that she had called his brother-in-law and that he was on his way, he

threatened to kill the brother-in-law as well. During this testimony, the defense objected only to the testimony concerning statements made by the decedent. The trial court overruled the Appellant's objection, admitted the statement, and admonished the jury.

■ Mr. Bobbett testified that three weeks prior to the murder, he received a call from the decedent concerning a fight with the Appellant, asking him to come and pick her up. During his testimony, Bobbett also mentioned a conversation he had with the decedent in which she informed him that the Appellant "told her if she left him, that he would kill her". Again, the defense attorney objected to all testimony concerning statements attributed to Karla Duvall, and the trial court overruled the defense objection, admitted the statements and admonished the jury as follows:

BY THE COURT: Ladies and gentlemen. let me interrupt at this point to speak concerning the statement that you have heard that was made. That statement is introduced not for the truth of the matter related in the statement, but only as that statement relates to the state of mind of the deceased, Karla Duvall, in relation to the defendant, John Duvall. Not for the truth of the statement, but only as it may shed light as to the state of mind of the decedent. All right. Thank you. You may continue, sir. (Tr. 674, 675)

Prior to the admission of this evidence a pretrial discussion was conducted wherein it was indicated that the defendant would take the stand and testify in his own behalf. Although we agree that these statements are hearsay, we find that they are admissible under the state of mind exception to the hearsay rule set forth in 12 O.S.1981, § 2803(3), which states in pertinent part:

§ 2803. Hearsay Exceptions: Availability of Declarant Immaterial.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness;

3. A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan motive, design, mental feeling, pain and bodily health....

The relevance of testimony showing ill feeling, threats, or similar conduct by one spouse toward another in a marital homicide case has been established by this Court. *Lamb v. State,* 767 P.2d 887 (Okl. Cr.1988); *Manning v. State,* 630 P.2d 327, 330 (Okl.Cr.1981). In *Wadley v. State,* 553 P.2d 520 (Okl.Cr.1976), this Court, in citing II Wigmore on Evidence, § 396 (3rd ed. 1940), recognized that where hostile emotions at a particular time are to be proved in a case, the existence of the same emotion in the same person at another time is proper evidence. Moreover, the court admonished the jury each time testimony regarding statements made by the decedent were elicited from these witnesses.

In addition, the trial court instructed the jury on the applicable law of the case, including Instruction No. 10, which provided:

During the trial, you heard the testimony of Connie McKinney and Don Bobb[e]tt as to certain statements made by the decedent, Karla Duvall, as to threats related to her by the defendant. You were instructed during the trial that you could consider the statements only as they might relate to the decedent's state of mind.

At this point, you are instructed to disregard all statements of the decedent, as they are not relevant to any of the issues you will be called upon to decide. (O.R. 151)

■ Appellant has attempted to raise the issue of notice under *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979), overruled on other grounds in *Jones v. State,* 772 P.2d 922, 925 (Okl.Cr.1989), for the first time on appeal and as a part of the supplemental authority provided to the Court four (4) days prior to oral argument. The purpose of the notice required by *Burks* is to ensure that a defendant has the opportunity to defend against evidence which is admissible pursuant to 12 O.S.1981, § 2404 B. The issue of notice was not raised at any time during trial or in the Appellant's origi-

nal or reply briefs. In this case, the record does not disclose whether or not the Appellant was surprised by the evidence or if he objected to its presentation based on a failure to give notice. Thus, in light of Appellant's failure to object to the notice requirements set forth in *Burks* at the time and manner prescribed by the law, he has now waived his right to claim error based on these grounds. Therefore, it is the opinion of this Court that testimony showing decedent's fear of Appellant is relevant, hence, Appellant's first assignment of error is denied.

 In his second assignment of error Appellant alleges that the trial court erred in failing to instruct on either First Degree Manslaughter or Second Degree Murder. A trial court should not instruct on a lesser included offense if the evidence will not reasonably support a conviction on the lesser included offense. *Hale v. State,* 750 P.2d 130 (Okl.Cr.1988); *Funkhouser v. State,* 721 P.2d 423 (Okl.Cr.1986). Here the Appellant, in his statement to police, admitted to planning the murder after talking to his wife around 3:00 p.m. that afternoon. In his statement he admitted that he had been thinking about his wife and the drugs and "went out there and killed her". (Tr. 613–14) The Appellant explained that he arrived at his wife's duplex at 9:00 p.m. but waited on the porch of an empty duplex next to his wife's apartment until her neighbor left around 10:30 p.m. Once inside the apartment he not only hit the decedent with an ashtray, but he also stabbed her numerous times. The Appellant stated that, at her request, he took her to the shower, washed her off and then put her on the bed. Appellant stated that the decedent then asked for help but he responded, "I think its too late for that ... I put (a pillow) over her head". After the murder, the Appellant said he changed clothes, went to Dewayne Wilson's house, and he and Wilson went to Emmitt's Club.

Under 21 O.S.1981, § 711(2), the heat of passion necessary to mitigate first degree murder to first degree manslaughter "must render the mind incapable of forming a design to effect death....". *Brown v. State,* 777 P.2d 1355, 1358 (Okl.Cr.1989); *Walker v. State,* 723 P.2d 273, 284 (Okl.Cr. 1986), *cert. denied* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986). Homicide is murder in the second degree in the following case: (1) when perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; ..... 21 O.S.1981, § 701.8. Considering the nature of the wounds and the surrounding circumstances, a rational juror could not find from the evidence that Karla Duvall's death was not the result of a premeditated design to effect death. Clearly there was no evidence that the death arose from heat of passion. Therefore, Appellant was not entitled to an instruction on first degree manslaughter or second degree murder.

Appellant alleges in his third assignment of error that the trial court erred by refusing to allow him to present evidence in support of his defense. Specifically, he alleges error in suppressing evidence of the decedent's prior drug conviction. It must be noted that Appellant did not call any witnesses in either stage of the trial. Thus, his objections go to the trial court's rulings on his attempt to cross-examine witnesses called by the State in their case in chief.

 This Court in *Burton v. State,* 754 P.2d 1215 (Okl.Cr.1988), held that a prior felony would have been admissible only to establish a pertinent trait of the victim's character. 12 O.S.1981, § 2404(A)(2). In *Burton* this Court determined that a conviction for Third Degree Arson was not in itself relevant to a pertinent character trait of the victim, since that crime may or may not involve violence. Similarly here, the fact that the decedent may have had a conviction is irrelevant to the determination of whether the Appellant is guilty. The Appellant does not claim that the deceased's prior conviction or prior drug use supplied provocation, but claims provocation from the fact that the decedent told him in a telephone conversation that she was resuming her use of illegal drugs on

the day of the homicide. The fact that the decedent would not discontinue the use of the drugs is not relevant to Appellant's theory of provocation. Approximately seven (7) hours elapsed between the time of the telephone call, which allegedly provoked the Appellant, and the time the victim was actually killed. Moreover, there is no evidence that the verdict in this case would have been different had the jury heard that the victim had a prior conviction. Therefore, for the reasons discussed above, this evidence was properly excluded as inadmissible and this assignment of error is found to be meritless.

■■■ Appellant cites a number of comments made by the prosecutor during closing argument in his fourth assignment of error as improper tactics designed to inflame the passion and prejudice of the jury against the Appellant. The Appellant complains of seven different comments made by the prosecutor during the first stage closing argument. However, the record reveals that defense counsel failed to object to all but one of these comments. We have consistently held that when the prosecutor makes objectionable statements, it is incumbent upon defense counsel to call the statements to the attention of the trial court by making a timely objection. *Carol v. State*, 756 P.2d 614 (Okl.Cr.1988). Thus, with the exception of one, we can only review these allegations for fundamental error. *See Mann v. State*, 749 P.2d 1151, 1160 (Okl.Cr.1988); *Tobler v. State*, 688 P.2d 350 (Okl.Cr.1984).

In *Tobler* we restated our definition of "fundamental error" as those "which go to the foundation of the case, or which take from the defendant a right which was essential to his defense." 688 P.2d at 353. Usually the conduct designed to prejudice Appellant falls into six categories: 1) Pleas to the jury to have sympathy for the victim; 2) Unfair characterization of the Appellant; 3) Irrelevant and prejudicial testimony; 4) Conclusive and rhetorical questions; 5) Photographs and descriptions of the decomposed bodies of the victims; and 6) The prosecutor aligning himself with the jury and the public, and thereby making statements of law. *Id.*

■■■ The Appellant first asserts that the prosecutor's comments on the blood and foul smell were improper because they were inflammatory. Specifically, he directs our attention to the following statements:

If you will recall, he said there was blood all over the house. I'll ask you ladies and gentlemen, to look at State's Exhibit Number 4, Number 3. There is indeed blood all over the house. As a matter of fact, it looks like a slaughter house there in that—in that kitchen. (Tr. 744)

The evidence was that the smell of decaying flesh was so strong that Sheriff Alexander had to make three attempts to enter into the premises to examine—to find Karla—to find out what happened to Karla. (Tr. 771)

In *Tobler* this Court found that the details of the condition of the bodies provided nothing in the way of new evidence, and had the potential, if not certain, effect of unduly prejudicing Appellant. However, even if there is error during a trial, this alone is not sufficient to require reversal, and the burden is on the defendant to establish that he was prejudiced in his substantial right by the error. *See Smith v. State*, 656 P.2d 277, 284 (Okl.Cr.1982). While these remarks were unnecessary and are not to be condoned, they were not so improper, in light of the evidence presented, as to have affected the verdict of the jury.

■■■ The Appellant next objects to the prosecutor's remarks that the defendant had butchered the victim. The number of stab wounds suffered by the victim and the evidence of blood at the scene certainly supports a reasonable inference consistent with the evidence.

■■■ Appellant next asserts that the prosecutor improperly appealed to the jury's sympathy, referring to the prosecutor's comments that the Appellant had his day in court, and had been treated fairly and with more mercy than he showed Karla Duvall. Again, no objection was made. It is our opinion that these comments fall

"within the bounds of wide latitude of discussion allowed" in closing argument, and as such are not grounds for prosecutorial misconduct. *Carol* 756 P.2d at 617. While we do not condone comments encouraging the jury to allow sympathy, sentiment or prejudice to influence its decision, after carefully reviewing the evidence, we are unable to find that the comments affected the verdict of the jury. *Smith v. State*, 703 P.2d 947 (Okl.Cr.1985); *Williams v. State*, 658 P.2d 499 (Okl.Cr.1983).

▮ The Appellant further complains that the prosecutor improperly injected his personal opinion into the closing argument. Appellant refers to the prosecutor's comment that in his "way of thinking" the defendant was guilty of First Degree Murder. We note that defense counsel did object to this comment and the trial judge admonished the prosecutor not to make personal comments on the evidence.

In support of his complaint Appellant cites *Gossett v. State*, 373 P.2d 285 (Okl.Cr. 1962). The present case is clearly distinguishable from *Gossett*, which was reversed because of a combination of comments and statements made by the prosecution during the trial. The evidence against Gossett was wholly circumstantial. Here, the prosecution expressed his personal opinion only once, which we find was not verdict determinative. The court sustained the defense's objection to the comment and the prosecutor was admonished. In addition, the strong evidence of the Appellant's guilt is clearly not circumstantial.

▮ Finally, he charges that error occurred when the prosecutor addressed jurors by their names during closing argument. Although it was not necessary for the prosecutor to engage in this type of familiarity with the jurors, the limited potential effect of this familiarity is greatly outweighed by the overwhelming evidence of guilt. Finding no errors requiring reversal, this assignment is without merit.

In his fifth proposition, Appellant complains that he was deprived of his right to a fair trial when the prosecutor presented misleading evidence to the jury. He specifically points to the testimony of Ms. McKin-

ney and the medical examiner. Ms. McKinney testified that she had seen no sign of drug use on the part of the decedent during the year that she knew her. The medical examiner testified that in his examination of Mrs. Duvall he found no trace of needle marks, nor any sign of drug related kidney damage. (Tr. 666, 538)

In support of his contention, the Appellant refers to alleged evidence that the decedent was on a conditional drug program, and had pled guilty to a drug related offense. However, the court determined that, although a charge had been filed, the decedent had received a deferred imposition of sentence. Therefore, the trial court ruled that the defense could not go into that particular matter, but could go into the general reputation and character of the decedent for drug use.

▮ In support of his allegations the Appellant cites *Wing v. State*, 579 P.2d 196 (Okl.Cr.1978). However, *Wing* is distinguishable from the instant case. *Wing*'s complaint of prejudicial evidence referred to improper remarks by the prosecutor which may have conveyed an erroneous impression to the jury. In *Wing* there was an attempt to create the impression that evidence, which was not a controlled dangerous substance, actually was a controlled dangerous substance in the possession of the defendant. In the instant case the evidence presented referred to the decedent, Karla Duvall, and not the Appellant, and was presented to show the absence of illicit drugs on the day in question. The question was asked on cross examination and the ruling was proper as to the scope of that inquiry. Further, if the defense objected to the response of the State's witnesses, he had ample opportunity to put on witnesses during his case if there was relevant evidence of her drug use to be presented. We do not find that this evidence misled the jury. Therefore, this assignment of error is without merit.

▮ The Appellant next contends in his sixth proposition that the trial court erred in removing two veniremen for cause without allowing the defense the opportuni-

ty to attempt to rehabilitate them. In particular, he refers to venirepersons, Williams and Franks. Both Mrs. Williams and Mrs. Franks were asked the following questions:

> BY THE COURT: In a case where the law and the evidence warrant, in a proper case, could you agree without doing violence to your conscience, with a verdict imposing the death penalty? (Tr. 75, 316)

Both prospective jurors responded in the negative. In *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court determined that the death penalty could not be carried out if the jury that imposed it had been selected by excluding for cause venirepersons who expressed general objection to the death penalty or conscientious or religious scruples against its infliction. A venireperson is only required to be willing to consider all the penalties provided by law and that he not be irrevocably committed before the trial has begun. *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). Although we have approved of this question by affirming cases in which it was used in the past, we also found in *Banks* that violence done to one's conscience is not the point of the *Witherspoon* voir dire examination. The only legitimate concern being whether each jury member will consider the imposition of the death sentence, as one of the alternatives provided by state law, should the case be appropriate for that punishment. *Banks,* 701 P.2d at 422. To make this clear to a prospective juror, we find that the last sentence of OUJI–CR 104.9 Alternate 2 should be modified to read as follows:

> If selected as a juror, and you find that the law and evidence in this case warrants the recommendation of the death penalty, could you vote to recommend that penalty?"

In the case of prospective juror Franks, the following dialogue continued:

> BY THE COURT: Well, I understand that you have a problem. I'm sure all of the other eleven jurors do. Some people called it the ultimate question, but of course, the State of Oklahoma and the Defendant are entitled to an answer as to whether you can or you cannot agree with one. Again we are talking in the abstract right now, but shortly this case will not be in the abstract, and it will be presented to a jury, and we need to know your feelings on that. Certainly I understand that you couldn't agree with one without a great amount of soul searching, but the question is, regardless of that, could you without doing violence to your conscience?

> BY JUROR FRANKS: I don't think I could.

> BY THE COURT: All right. Let me ask it in this way. If you found beyond a reasonable doubt that the Defendant was guilty of Murder in The First Degree, and if under the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death, are your reservations about the death penalty such, that regardless of the law, the facts and circumstances of the case, you would not consider inflicting the death penalty?

> BY JUROR FRANKS: I don't think so.

> BY THE COURT: All right. Thank you, Ma'am. You're excused from this particular case, but we need to see you at 1:00 o'clock this afternoon. (Tr. 316, 317)

Venireperson Williams was also asked similar questions by the court and dismissed for cause during voir dire. The examination was conducted, in pertinent part, as follows:

> BY THE COURT: Miss Williams, in a case where the law and the evidence warrant, in a proper case, could you without doing violence to your conscience, agree to a verdict imposing the death penalty?

> BY JUROR WILLIAMS: No.

> BY THE COURT: Could not. Let me ask you a second question, Miss Williams. If you found beyond a reasonable doubt that the Defendant was guilty of Murder In The First Degree and if under the evidence, facts and circumstances of the case, the law would permit you to consider a sentence of death are

your reservations about the death penalty such, that regardless of the law, the facts and circumstances of the case, you would not consider inflicting the death penalty?

BY JUROR WILLIAMS: No, I would not consider it.

BY THE COURT: You would not consider it under any circumstances. Is that correct?

BY JUROR WILLIAMS: (Juror Williams moved her head up and down).

BY THE COURT: Miss Williams, at this time the Court would excuse you from serving on this particular case. Again, though, we'll need to see you tomorrow morning at 9:00. (Tr. 75, 76)

It appears to this Court that both prospective jurors were committed to vote against the death penalty regardless of the law, and that it was therefore proper to permit them to be dismissed for cause. Moreover, it was not error in this case to refuse the Appellant any opportunity to rehabilitate the excused veniremen.

■■■■■ The manner and extent of voir dire examination rest largely in the sound discretion of the trial judge. *Banks*, 701 P.2d at 423. This Court has previously held that a trial court exercises its discretion in excusing for cause those jurors in a capital case whose views concerning the death penalty would prevent, or substantially impair, the performance of their duties as jurors. *Rojem v. State*, 753 P.2d 359 (Okl.Cr.1988). Although prospective Juror Franks' response is not an affirmative yes or no, the Court in *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841, 852 (1985), determined that some veniremen could not be asked enough questions to establish such a record, nonetheless a judge may have a definite impression that the prospective juror would be unable to properly fulfill his or her oath. *Rojem* 753 P.2d at 364. Therefore, we find this assignment of error to be without merit.

■■■■■ In his seventh proposition of error Appellant alleges that the trial court's refusal to dismiss venireman Wittie for cause violated his right to a fair and impartial jury. Contrary to the claim made by the defense, the defense did not use one of its preemptory challenges against Mr. Wittie. In fact, the record clearly reflects that the State used its fifth preemptory challenge to excuse Mr. Wittie from service. Further, the record reflects that both the defendant and the State passed Mr. Wittie for cause. This Court has repeatedly held that a demonstration of prejudice is a necessary prerequisite for any claim of error on appeal. *Johnson v. State*, 760 P.2d 838 (Okl.Cr. 1988). Finding no prejudice here, this assignment of error is without merit.

In his eighth proposition of error Appellant complains that the trial court erred in improperly restricting Appellant's right to voir dire potential jurors on the possibilities of the death sentence being actually carried out. He compares the comments made by the prosecuting attorney in second stage closing argument in *Coats v. State*, 589 P.2d 693 (Okl.Cr.1978), with the right to voir dire individual jurors in the present case. In *Coats* this Court found that the comment made by the prosecutor was improper because it was intended to imply to the jury that the defendant's sentence in the prior case would be reduced on appeal. However, we are unable to see any comparable similarity between *Coats* and the present case.

■■■■■ We have consistently held that the manner and extent of examination of prospective jurors rest largely in the sound discretion of the trial court, and absent a clear abuse of discretion, the trial court's ruling will not be disturbed. *Ake v. State*, 778 P.2d 460, 466 (Okl.Cr.1989); *Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985). "The purpose of voir dire examination is to ascertain whether there are grounds to challenge for either actual or implied bias to permit the intelligent exercise of preemptory challenges." *Jones v. State*, 508 P.2d 280, 282 (Okl.Cr.1973). Hence, there is no abuse of this discretion so long as the voir dire questioning is broad enough to afford the Appellant a jury free of outside influence, bias or personal interest. *Manning v. State*, 630 P.2d 327 (Okl.

Cr.1981); *Stott v. State*, 538 P.2d 1061 (Okl.Cr.1975).

There is no evidence in the record to show that any juror entertained prejudice which might have impaired his ability to fairly pass upon the issues in rendering a verdict and recommending a sentence. The Constitution does not always entitle a defendant to have questions posed during voir dire specifically directed to matters that might prejudice jurors against him. *United States v. Polk*, 550 F.2d 1265 (10th Cir.1977), citing *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). In fact, it is not relevant or proper to inquire as to whether or not a juror actually believes the penalty recommended will or will not be imposed. Therefore, given the traditionally broad discretion accorded to the trial judge in conducting voir dire, and our inability to discern any possible prejudice from not allowing that particular question on voir dire, we do not find that the Appellant's constitutional rights were violated when the trial judge refused this question. Accordingly, finding no error resulting from this exclusion, this assignment is without merit.

In his ninth assignment of error, Appellant complains that the trial court erred by not granting his motion to sequester the jury and to conduct individual voir dire of the prospective jurors. Specifically, in his motion he requested that the trial court allow counsel to voir dire the prospective jurors individually, separate and apart each from the other, and sequester the jurors from the courtroom during the voir dire in order to prevent the jury panel from hearing the questions being asked individual jurors. Appellant cites as authority *Evans v. State*, 26 Okl.Cr. 9, 221 P. 794 (1924), (which held that submission of the cause to the jury at the close of the argument refers to a separation of the jurors after being charged by trial court and after opposing counsel have made their closing statements); and *Tomlinson v. State*, 554 P.2d 798 (Okl.Cr.1976), (wherein the jury did not separate after being charged by trial court and hearing the closing arguments but did separate prior to

submission of case). However, these cases do not support the Appellant's allegations of error. Further, counsel does not call the Court's attention to any evidence, either in the record or in his brief, to show prejudice as a result of lack of sequestration during jury selection. He merely claims that the nature of the crime, the small size of the town of Duncan, and the fact that the death penalty was being sought were all reasons why refusing these motions constituted a violation of his right to a fair trial. We held in *Morrison v. State*, 619 P.2d 203 (Okl.Cr.1980), and reiterated in *Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983), that whether private individual voir dire should be conducted is a matter within the discretion of the trial court. We hold that the trial court did not abuse its discretion in this case. Each juror sworn stated that he or she could be fair and impartial. Jurors are not required to be totally ignorant of the fact and issues. *Nauni*, 670 P.2d at 130. The defendant carries the burden of persuasion in overcoming the presumption that he or she can get a fair and impartial trial. *Foster v. State*, 714 P.2d 1031 (Okl. Cr.1986); *Hammons v. State*, 560 P.2d 1024 (Okl.Cr.1977). Here we are unable to discern any purpose for sequestration during voir dire or any evidence of bias which was not disclosed during the trial court's voir dire. We also note that when it appeared necessary for a potential juror to be questioned individually, it was permitted by the trial court. We find that the trial court properly exercised its discretion. Therefore, this argument must fail.

In his tenth proposition of error Appellant alleges that the failure of the trial court to grant his discovery motions was a violation of equal protection under the Fourteenth Amendment of the United States Constitution. Appellant makes a general statement without citing any authority for this claim. The principal statutes governing criminal discovery by the defendant in Oklahoma are 22 O.S.1981, § 303, which requires that the names and addresses of witnesses be endorsed on the information; and 22 O.S.1981, § 749, which entitles the defendant to receive copies of

sworn statements of witnesses. Discovery in Oklahoma in State criminal cases is primarily controlled by case law. Under Oklahoma case law, applicable at the time of trial, a defendant is generally entitled to scientific and technical reports. *Moore v. State*, 740 P.2d 731, 735–36 (Okl.Cr.1987). A defendant is also entitled to exculpatory evidence. *Van White v. State*, 752 P.2d 814, 819 (Okl.Cr.1988). Further, a defendant is entitled to his own custodial written statements and the substance of oral ones. *Watts v. State*, 487 P.2d 981 (Okl.Cr.1971). We have previously held that police investigative reports are not discoverable unless they contain evidence which is both "favorable" to the accused and "material" to guilt or punishment. *Van White*, 752 P.2d at 819.

In the present case, the Appellant failed to specify in his brief just what evidence the prosecutor failed to disclose. The record is also void of any information supporting this claim. On the contrary, the record shows that the prosecution was very cooperative in providing the Appellant with any documents or information he possessed or might be able to provide in accordance with the law. The Appellant has failed to demonstrate constitutional error by showing that the prosecutor suppressed favorable evidence, material to guilt or punishment, which deprived him of a fair trial by undermining confidence in the outcome of the trial. *Id.* at 814. This assignment of error is without merit.

Next, we address Appellant's eleventh assignment, in which he argues that the trial court committed fundamental error when it failed to instruct the jury that the death penalty must be proven beyond a reasonable doubt. Appellant states, without authority, that the instruction that "any aggravating circumstances that exist must be found beyond a reasonable doubt" does not meet the mandate of the Eighth Amendment to the federal Constitution and due process clause of the Fourteenth Amendment of the federal Constitution. Appellant neither requested nor submitted an instruction such as he now claims should have been given. Moreover, he offers no cases in support of his claim other than one recognizing the presumption of innocence until proven guilty beyond a reasonable doubt. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

The record clearly demonstrates that the jury was properly instructed of the State's burden of proof and of their duty to weigh the countervailing circumstances and to determine the appropriate sentence. The following instructions were given concerning sentencing, burden of proof and legally recognized presumptions which adequately advised the jury of the appropriate law: Instruction No. 2 (OUJI–CR–433), Instruction No. 3 (OUJI–CR–434), Instruction No. 4 (OUJI–CR–435), Instruction No. 5 (OUJI–CR–436), Instruction No. 6 (OUJI–CR–437), Instruction No. 7 (OUJI–CR–438), Instruction No. 8 (OUJI–CR–439), Instruction No. 9 (OUJI–CR–440), Instruction No. 10 (OUJI–CR–441). This assignment of error is without merit.

In his twelfth assignment of error, Appellant contends that the trial court committed fundamental error in failing to instruct the jury on the consequences of being unable to reach a unanimous verdict as to punishment within a reasonable time. This contention has been addressed in numerous cases by this Court. We are not persuaded by Appellant's argument that we should abandon our position that such an instruction is unnecessary. *Hale v. State*, 750 P.2d at 139; *Smith v. State*, 737 P.2d 1206, 1216 (Okl.Cr.1987); *Johnson v. State*, 731 P.2d 993, 1005 (Okl.Cr.1987); *Brogie v. State*, 695 P.2d 538, 547 (Okl.Cr. 1985). We find this assignment to be without merit.

Appellant asserts in his thirteenth proposition of error that the trial court committed fundamental error by not instructing the jury that there exists a "presumption of life' which guarantees a person convicted of murder the right to live incarcerated for life unless the prosecution demonstrates beyond a reasonable doubt that death is the only appropriate penalty for the defendant." Appellant neither requested this specific instruction at the time

of trial, nor now cites relevant authority in support of it. *See Fox v. State*, 779 P.2d 562 (Okl.Cr.1989). We note the cases he cites in support only recognize the presumption of innocence until proven guilty beyond a reasonable doubt. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The instructions given adequately apprised the jury of the appropriate law concerning sentencing, and included instructions on legally recognized presumptions. The trial court was not constitutionally required to instruct the jury on the standard now claimed by Appellant for the justification of the death penalty. *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Rojem*, 753 P.2d at 369. Therefore, this assignment of error is without merit.

In his fourteenth assignment of error Appellant alleges that Oklahoma has been applying the heinous, atrocious, or cruel aggravating circumstance in an arbitrary manner. The Appellant cites *Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir.1987), for the proposition that this aggravating circumstance has been applied unconstitutionally. He alleges that the concept of appellate review which includes reweighing of aggravating and mitigating factors set forth in *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987), (Opinion on Rehearing), cannot be applied in this case because the present case was tried before either *Cartwright* or *Stouffer*. Thus, Appellant maintains that the application of especially heinous, atrocious, or cruel is limited to those crimes where death of the victim was preceded by torture of the victim or serious physical abuse. Further, Appellant argues that by weighing aggravating factors against mitigating factors, it is impossible to determine that one improper aggravating circumstance did not tip the balance. Appellant argues that the application of the principles set forth in *Stouffer* to his case are applied retroactively to his substantial detriment, which is unconstitutional. Appellant contends that because there was no physical abuse other than the murder it-self, there was clearly no torture and therefore, under *Stouffer*, there is no aggravating circumstance. We disagree.

The jury was given complete instructions from the Oklahoma Uniform Jury Instructions—Criminal No. 436, which defines the individual terms of "heinous", "atrocious" or "cruel" and explains heinous, atrocious or cruel to mean those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse. The evidence presented at trial showed that Karla Duvall, in addition to initially being hit on the head with an ashtray, received approximately 25 stab wounds to her body. The medical examiner testified that the decedent lived for approximately ten minutes after receiving the wounds. The evidence also revealed that when the decedent asked Appellant to wash her off and lay her on the bed she asked for help, but Appellant responded with "I think its too late for that." Clearly the evidence of a lingering death and the manner in which it was inflicted, sufficiently supports the finding of serious physical abuse or torture, and the finding that the murder was "especially heinous, atrocious or cruel". Accordingly, this assignment of error is without merit. We also note that Appellant does not allege any error regarding the finding by the jury that the aggravating circumstance that the Appellant was previously convicted of a felony involving the use or threat of violence to the person was also proven beyond a reasonable doubt.

In his fifteenth assignment of error, Appellant alleges that the Oklahoma death penalty statute is unconstitutionally overbroad because of the manner in which this Court interprets the aggravating circumstances, citing as examples the aggravating circumstances of "continuing threat to society" and "great risk of death to more than one person". 21 O.S.1981, §§ 701.-12(2), and (7). In the instant case neither aggravating circumstance was alleged by the State or found by the jury and therefore this argument is not supported by the record. This Court has spoken to these particular issues in a number of cases and

found them to lack merit, as we do here. *Rojem,* 753 P.2d at 359.

■ Appellant contends in his sixteenth assignment of error that the death penalty was imposed unconstitutionally because neither Oklahoma Law nor the court's instructions provided particularized guidelines for considering mitigating circumstances. Appellant directs this Court to *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), wherein the Supreme Court of Texas adopted a new capital sentencing statute which required the jury to answer three questions prior to sentencing. In construing *Jurek,* the U.S. Supreme Court found that Texas had essentially said that there must be at least one aggravating circumstance in a first degree murder case before the death sentence could be considered, and also authorized the defendant to bring before the jury at the separate sentencing hearing the mitigating factors to be considered.

Among the instructions given by the trial court in the instant case were the following:

Instruction No. 7: Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

Instruction No. 8: Evidence has been offered as to the following mitigating circumstances:

1. Defendant surrendered himself;
2. Defendant informed the Sheriff of the killing and its details;
3. No law enforcement agency had previous knowledge of the death of Karla Duvall;
4. Defendant exhibited remorse;
5. Defendant cooperated with law Enforcement authorities;
6. Defendant was under the influence of alcohol or drugs at the time of the incident;
7. The defendant did not attempt to flee the jurisdiction of the State.

Whether these circumstances existed, and whether these circumstances are mitigating, must be decided by you [the jury].

Instruction No. 6: Should you unanimously find that one or more aggravating circumstances existed beyond a reasonable doubt, you would be authorized to consider imposing a sentence of death.

Instruction No. 9: If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances, the death penalty shall not be imposed.

We have reviewed the record and are satisfied that the trial court properly instructed the jury of the definition of mitigating factors and of the balancing required against aggravating factors. *Rojem,* 753 P.2d at 368.

■ The Appellant challenges the admission of certain photographs and exhibits in his seventeenth proposition of error as being gruesome to the extent that prejudice outweighed any probative value. Specifically, he refers to a photograph of the nude body of the victim showing the victim as discovered at the crime scene, a bloody piece of floor tiling, a bloody shirt worn by the Appellant and finally, a bent meat fork used in the homicide and found at the scene. This Court has consistently held that photographs of a murder victim are proper evidence of corpus delicti. *See Stouffer v. State,* 738 P.2d 1349 (Okl.Cr. 1987); *Newbury v. State,* 695 P.2d 531 (Okl.Cr.1985); *Selsor v. State,* 562 P.2d 926 (Okl.Cr.1977). We note that the photograph and exhibits were particularly significant here because they corroborate the Appellant's statements regarding the homicide. In particular, the photograph accurately depicted the position of the body and the crime scene.

■ Next, Appellant alleges that the jury was instructed to ignore sympathy and mitigating evidence in violation of the Eighth and Fourteenth Amendments of the

United States Constitution. In support of his argument he cites *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988), wherein the United States Court of Appeals 10th Circuit, reversed Parks' sentence of death, holding that instruction violated Parks' Eighth Amendment rights by creating an impermissible risk that the jury was precluded from considering relevant mitigating evidence. However, in *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the United States Supreme Court reversed the judgment of the Court of Appeals citing *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), which held that an instruction telling the jury not to be "swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling" during the sentencing phase did not violate the Eighth Amendment. Therefore, we find this assignment of error to be without merit. See also *Fox,* 779 P.2d 562; *Fowler v. State,* 779 P.2d 580 (Okl.Cr.1989).

■ Finally, pursuant to 21 O.S.Supp. 1987, § 701.13(C), we are called upon to determine two issues in all capital cases:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

2. Whether the evidence supports the jury finding of a statutory aggravating circumstances as enumerated in Section 701.12 of this title.

After reviewing the record, we cannot say that the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to Section 701.13(C)(1). Thus, upon careful consideration of the evidence supporting the jury's finding of a statutory aggravating circumstance, and the evidence offered in mitigation, we find the sentence of death factually substantiated and valid.

Therefore, finding no error warranting reversal or modification, the judgment and sentence with regard to Murder in the First Degree is AFFIRMED.

BRETT and JOHNSON, JJ., concur.

LANE, P.J., concurs in result.

PARKS, J., specially concurs.

LANE, Presiding Judge, concurring in results:

While I agree with the majority's holding affirming the death sentence in this case, I find several aspects of the majority's reasoning troublesome.

This Court has had extensive opportunity to analyze the meaning, limitation and application of the aggravating circumstance, heinous, atrocious or cruel. *See Stout v. State,* 817 P.2d 737 (Okl.Cr.App.1991); *Nuckols v. State,* 805 P.2d 672 (Okl.Cr. 1991); *Cartwright v. State,* 778 P.2d 479 (Okl.Cr.1989); *Nguyen v. State,* 769 P.2d 167 (Okl.Cr.1988); *Stouffer v. State,* 742 P.2d 562 (Okl.Cr.1987); *Castro v. State,* 745 P.2d 394 (Okl.Cr.1987). If this analysis has taught us anything, it is that extreme precision is necessary in the language we use to both define and limit the application of this aggravating circumstance.

I believe the majority misstates Oklahoma Uniform Jury Instructions—Criminal No. 436 which first defines and then properly limits the application of this aggravating circumstance. The majority states this instruction "explains heinous, atrocious or cruel to *mean* those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse." (majority at 634) (emphasis added).

Careful reading of Instruction No. 436 makes clear that it *limits the application* of this aggravating circumstance to those crimes where the death of the victim was preceded by torture or serious physical abuse. The instruction *defines* "heinous" as extremely wicked or shockingly evil; "atrocious" as outrageously wicked and vile; and "cruel" as pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others. While this explication of the text of Instruction No. 436 given to the appellant's jury does not change the holding of the Court, I believe we must pay extremely close attention to the exact meaning and usage of the words in the jury instruction,

particularly when it is the subject of continuing constitutional challenge.

PARKS, Judge, specially concurring:

For the reasons stated in my separate opinion in *Fox v. State*, 779 P.2d 562, 579 (Okl.Cr.1989), I continue to view the so-called "anti-sympathy" instruction in the second stage of trial unnecessary and confusing to the jury where mitigating evidence has been introduced. I also reiterate my opinion that the "especially heinous, atrocious or cruel" aggravating circumstance is unconstitutionally vague both on its face and as applied. *See Foster v. State*, 779 P.2d 591, 594 (Okl.Cr.1989) (Parks, P.J., specially concurring). As a matter of *stare decisis*, however, I must yield my view to that of the majority of this Court. As such, I concur in the affirmance of appellant's conviction and sentence of death.

## ORDER DENYING MOTION FOR EVIDENTIARY HEARING AND PETITION FOR REHEARING—DIRECTING ISSUANCE OF MANDATE

On June 17, 1991, Appellant, John Wayne Duvall, filed a petition for rehearing in the above cause. On July 23, 1991, Appellant, filed a motion for an evidentiary hearing and to stay the issuance of the mandate. A motion for an evidentiary hearing was also filed on February 2, 1990, and subsequently on August 10, 1990, along with a request for appointment of local counsel and an investigator. Because these motions are interrelated, we combine them for review.

A rehearing is allowed pursuant to 22 O.S.Supp.1990, Ch. 18 App., *Rules of the Court of Criminal Appeals*, Rule 3.14. Rule 3.14(B) limits the conditions upon which a rehearing may be had to those situations where a question decisive of the case which was raised by the attorney of record has been overlooked or where the decision is in conflict with an express statute or controlling decision that was not called to the attention of this Court in the briefs. *K.V.F. v. State*, 805 P.2d 106 (Okl. Cr.1991).

In our review of the petition for rehearing, we were unable to find the petition to be based upon any of the foregoing conditions, except the request for an evidentiary hearing. In effect, Appellant seeks to raise a new proposition of error through the Petition For Rehearing which appears to be a request for post-conviction relief prior to the issuance of the mandate in this case. Our rules do not provide for this method of raising additional allegations of error.

In the motions for an evidentiary hearing, Appellant contends he received ineffective assistance of counsel at trial. Part of this motion also requested the appointment of local counsel and an investigator. It is Appellant's contention that his trial counsel failed to secure testimony of a number of witnesses who would have testified at both the guilt and punishment stages of his trial, and that these witnesses would have testified regarding the many mitigating circumstances involving both the crime and the Appellant's character and personality. Appellant alleges that because of his counsel's failure to present evidence of mitigation in the sentencing phase of the trial, his right to effective assistance of counsel was denied. We note that Appellant failed to raise this issue in his petition in error, or brief, on direct appeal. In addition, even though Appellant filed a motion for evidentiary hearing, he never requested leave to amend his pleadings or brief. His failure to raise the issue in his direct appeal waives the issue for appellate review.

Even if the issue was properly raised, appellate review of an ineffective assistance of counsel claim begins with a presumption of competence, and the burden is upon the defendant to demonstrate both a deficient performance and resulting prejudice. *Blake v. State*, 765 P.2d 1224 (Okl. Cr.1988), citing *Strickland v. Washington*, 466 U.S. 668, 687–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). If such a claim can be disposed of on the ground of lack of prejudice, an appellate court need not determine whether trial court's performance was deficient. *Id.* Thus, unless the appel-

lant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown of the adversary process that renders the result unreliable. *Strickland* at 686, 104 S.Ct. at 2064. Moreover, the Appellant must overcome a presumption that, under the circumstances, the challenged action, "might be considered sound trial strategy." *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955).

In the instant case, the evidence against the Appellant was overwhelming. After examination of the record, it appears that Appellant's family's testimony, as set forth in the affidavit filed with Appellant's motion, would not have had any likely effect on the sentencing phase of appellant's trial. The failure of Appellant's counsel to call witnesses who assertedly could testify favorably in mitigation of death penalty was a tactical decision made by Appellant's counsel. *Brooks v. Estelle,* 697 F.2d 586, 588–589 (5th Cir.1982). Under the facts presented in this case, that choice was a viable decision for trial strategy. Absent a showing of incompetence, the Appellant is bound by the decision of his counsel, and mistakes in tactics and trial strategy do not provide grounds for subsequent attack. *Davis v. State,* 759 P.2d 1033 (Okl.Cr.1988), citing *United States v. Nolan,* 571 F.2d 528 (10th Cir.1978). Therefore, this proposition is without merit and would not have changed the decision of this Court had it been properly raised. The Motion for Evidentiary Hearing is DENIED.

Accordingly, Appellant's requests for motion for rehearing, to stay issuance of mandate and for evidentiary hearing are DENIED.

The Clerk of this Court is ordered to issue the mandate forthwith.

IT IS SO ORDERED.

/s/ James F. Lane
JAMES F. LANE,
Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN,
Vice Presiding Judge

/s/ Tom Brett
TOM BRETT,
Judge

/s/ Ed Parks
ED PARKS,
Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Judge